## PETER KERLING v. G. W. VAN DUSEN & COMPANY.[1]

May 14, 1909.

Nos. 16,080—(65).

**Fencing Dangerous Machinery — Instruction to Jury.**
   Whether the shaft to a wood-sawing machine should be guarded in any other manner than as protected by the feeding trough, in front of which

[1]Reported in 121 N. W. 227.

the operator stood, was a question of fact to be determined by the jury; and it was error for the trial court to instruct the jury that the master was negligent in failing to comply with the statute by not covering the shaft.

Action in the district court for Yellow Medicine county, by the administrator of the estate of Andrew Kerling, deceased, to recover $5,000 for the wrongful death of decedent. The case was tried before Powers, J., and a jury which returned a verdict in favor of plaintiff for $1,200. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Reversed and new trial granted.

*Morton Barrows,* for appellant.

*Thomas E. Davis, Ernest A. Michel* and *John I. Davis,* for respondent.

LEWIS, J.

Andrew Kerling, a boy of seventeen years of age, was killed while operating a circular wood saw for appellant, and his father brought this action under the statute to recover for the loss of services. The jury returned a verdict of $1,200. The action was based on the charge that appellant was negligent in not providing proper guards for the shaft, saw, and belting, and in not providing a proper belt shifter, and in failing to give the boy proper instructions. Defense: General denial, that the statutory provisions with reference to guards had been complied with, and that the boy was guilty of contributory negligence.

The machine consisted of a circular saw fastened to a shaft, which was kept in position by a frame which held the shaft about three feet from the ground. The machine was located in a shed adjoining a grain elevator building, and the shaft was propelled by a belt connected with the machinery in the elevator. The machine was designed to saw cordwood into the desired length, and on the front of it was located a wooden trough, or rest, about four feet long, the bottom part of which was about eight inches wide, and the back, or upright part, from eight to ten inches high. In operating, a stick of wood was placed in the trough, and the operator rocked the trough forward, thus bringing the stick in contact with the saw, and when the cut was

made he rocked it backward, and then moved the stick to the right for the next cut, and so on. Upon the shaft on which the saw was hung, and a few inches to the left of the saw, was a broken collar, or shoulder, which revolved with the shaft. The saw was unprotected, and the shaft was in no manner guarded except by the trough, which projected four or five inches above it. As the wood was cut, it fell from the saw to the right of the machine, and the pieces were thrown by the operator or some one else into a pile behind the machine. At the time of the accident the boy was in the act of cutting one of the sticks, when a piece of wood rolled down the pile and lodged in close proximity to the lower part of the saw. He was standing in front of the machine, a little to the left of the center of the trough, and reached over the top of the machine to pick up the piece of wood, when the sleeve of his coat was caught in the shaft and he was jerked partially over the machine, his head coming in contact with the shaft, and he was instantly killed.

It is admitted that it was practicable to adjust a covering for the shaft, and, had such covering been in place, the accident could not have happened; but appellant's claim is that the shaft was sufficiently guarded, considering the purpose for which the machine was designed, and that the master cannot be held to have anticipated that the operator, whose place is in front of the machine, would reach over in the manner stated, thus coming in contact with the shaft. On this point the court charged the jury as follows:

"The defendant not having complied with the law with reference to fencing or protecting this saw and the shafting to it, all this would tend to show negligence on part of the defendant, and the first question would be for you to determine, from the evidence, whether the death of the decedent was caused by the negligence of the defendant in not so covering or protecting in some way this saw and shaft. Unless you should determine that the death was caused by the negligence of the defendant, you would stop there and find a verdict for the defendant; but, if you should determine that it was caused by such negligence, you would proceed one step farther and inquire whether decedent * * * was guilty of any act that contributed directly to the injury which he received." Later on the court made the following statement: "I think I stated to you that this shafting

and the saw not being fenced or protected in any manner would of itself be negligence on the part of the defendant. I mean to qualify that by saying that the law requires it to be fenced and protected so far as practicable to prevent danger to workmen."

The court then directed the jury to determine whether or not, under all the evidence, it was practicable to further guard the shaft. One of the issues presented by the pleadings, and relied upon by appellant all through the trial, was that appellant was not required to place any other protection upon the shaft than that afforded by the trough, as already stated. The plain legal effect of the language used by the court in charging the jury was that the omission to put a covering on the shaft was a violation of the statute, which made out a prima facie case of negligence. Although the court instructed the jury to determine from all of the evidence whether or not appellant was guilty of negligence, and that the jury should determine whether it was practicable to protect the shaft with a covering, yet at the same time the jury were expressly told that appellant was guilty of negligence in omitting the covering. The instructions are consistent with one view only, viz., that appellant failed to comply with the statute in causing the machine to be operated without covering the shaft.

We are unable to accept the views of appellant that it conclusively appears that the machine was properly guarded as it came from the manufacturer. Experienced persons, with mature judgment, would not be likely to come in contact with the shaft while operating the machine; but it is by no means certain that the master should not be required to anticipate that an uncovered shaft, in the condition of this one, might be the cause of serious injuries when the machine was being operated by inexperienced persons and in cases of emergency.

On the other hand, considering the purpose for which the machine was intended to be used, and conceding that it was practically guarded for all ordinary purposes with reference to the operator standing in front of it, yet it does not conclusively appear that the master was guilty of negligence because he failed to put a covering on the shaft. It is a question concerning which reasonable men might differ, and hence a question of fact to be decided by the

jury. No exceptions were taken at the time, and the court's attention was not directed to the matter; but the point was raised on motion for a new trial, and is assigned as error in this court, and the question presented does not come within the rule of Steinbauer v. Stone, 85 Minn. 274, 88 N. W. 754.

Reversed. New trial granted.