PETER KERLING v. G. W. VAN DUSEN & COMPANY.[1]

January 14; 1910.

Nos. 16,418—(191).

**Refusal to Allow Additional Counsel.**

After a jury is impaneled additional counsel may be retained for the purpose of participating in the trial, and in the absence of a request to further

[1] Reported in 124 N. W. 235, 372.

109 M.—31

examine the jurors as to their qualifications it is error to refuse to permit such additional counsel.

**Minor's Aid Toward Support of Family — Evidence.**

In an action for damages resulting from the death of a minor, the amount of the contributions from the minor to his parents and the personnel of the household of which he was a member may be shown, for the purpose of arriving at the pecuniary loss caused by his death. Beyond this, the financial condition of the next of kin is immaterial.

**Charge to Jury —Singling Out Witness.**

It is error for the trial court to apply to the testimony of a single witness the instructions and rules by which the jury is to be governed in weighing the testimony of all the witnesses.

**Unguarded Machinery — Instructions.**

In an action for death or injury resulting from dangerous machinery left unguarded, in violation of R. L. 1905, § 1813, the location of the machinery, the sufficiency of the guards, and the necessity or liability of the operator coming in contact with it, are all substantial considerations to be submitted to the jury for determination.

**Excessive Damages.**

$4,500 is an excessive award in an action for the death of a minor, seventeen years of age, who during his lifetime contributed to his father not more than $90 per annum.

Action by the administrator of the estate of Andrew Kerling in the district court for Yellow Medicine county to recover $5,000 for his wrongful death. The case was tried before Powers, J., and a jury which rendered a verdict in favor of plaintiff in the sum of $4,500. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Reversed and new trial granted.

*Morton Barrows,* for appellant.

*Thomas E. Davis, Ernest A. Michel* and *John I. Davis,* for respondent.

O'BRIEN, J.

This action by the plaintiff to recover damages for the death of his minor son was before this court in Kerling v. G. W. Van Dusen & Co., 108 Minn. 51, 121 N. W. 227. The manner of the accident

and the description of the machinery, the claimed unguarded condition of which constitutes the alleged negligence of the defendant, were fully stated in the decision then rendered, as was the conclusion of this court that the liability of the defendant was a question for the jury.

The mandate directing a new trial was issued June 4, and filed in the office of the clerk of the district court June 7, 1909. Notice of trial for the term of the district court commencing June 15 was served June 5. A motion to strike the case from the calendar was denied, and the case reached for trial June 16, on which day a jury was impaneled and excused until Saturday, June 19, because of the professional engagements of counsel for defendant. Before entering upon the trial upon the nineteenth, defendant's counsel stated that he desired to associate with him in the defense as additional counsel, Mr. J. N. Johnson, a duly authorized practitioner in the courts of this state. Objection was made upon the ground that, the jury having been already impaneled, no opportunity had been afforded the plaintiff for inquiring into the relations which any of the jurors might sustain toward Mr. Johnson, and without any showing that any relation did in fact exist which would render any juror so impaneled unfit to act, the court refused to permit Mr. Johnson to assist in the trial.

1. We think the case was properly upon the calendar, but that the refusal to permit Mr. Johnson to participate in the trial was prejudicial error. A litigant has the right to be represented by counsel of his own choice, and unless for some reason the attorney is disqualified from accepting a retainer in a particular case, he has, while a duly qualified practitioner, the right to appear and act in court upon behalf of litigants at any stage of the proceedings. It is presumed that the jurors who had been impaneled were impartial, and that Mr. Johnson would not attempt to exert any improper influence over them. If, in the discretion of the court, counsel for plaintiff had been permitted to re-examine the jurors and ascertain whether any one of them bore such relation to Mr. Johnson as would render him unfit, it would have been entirely proper; but, in the absence of any showing to the effect that Mr. Johnson's pro-

posed connection with the case disqualified any of the jurors, and in the absence of any request to be permitted to further examine them, we feel that both the defendant and Mr. Johnson were denied substantial rights.

What the effect was upon the trial it is impossible to say. We are assured in the brief of counsel for defendant that his engagements necessitated his absence upon the second day of the trial. How much he was, for the same reason, forced to hurry the taking of testimony and other proceedings of the trial, we have no means of saying; but it is not necessary to go further than to find that the defendant was denied a substantial right in order to conclude that there must be a new trial of the action. This disposes of this appeal, but in view of another trial we deem it proper to consider the other assignments of error which seem important.

2. During the taking of the testimony the court intimated that it would be proper to show the financial condition of the next of kin. It is proper in a case of this sort to show the pecuniary loss sustained by the death which it is claimed was caused by defendant's wrongful act. It is, therefore, proper to show the actual contributions made by the deceased to his parents, as well as the character and habits of the deceased, so that the jury may come to an intelligent conclusion as to the continuation of such benefits, and in this connection we are inclined to think that a general description of the family of which deceased was a member would be proper. But it would not be proper to include statements as to the wealth or poverty of the plaintiff which do not tend to aid the jury in determining what the future conduct of the deceased would have been had he lived. So, in this case, we hold that whether or not the plaintiff owned or rented his home was immaterial.

3. The superintendent of the defendant had testified as to warnings or instructions given by him to the deceased, and referring to this the court said: "In determining whether or not these instructions were given by Mr. Ruddy, you would consider all of his testimony, and in that connection the court charges you that in a case of this kind, when the principal party involved is removed by death, and his testimony unavailable, the jury should proceed with great

caution in taking for granted the statements of witnesses who are or may be likely to be influenced by their surroundings."

The testimony of the witness Ruddy should have been considered and weighed by the jury, as was the testimony of all the other witnesses. The manner of testifying and the interest which any witness might have in the result, his intelligence and opportunities for arriving at the truth, were matters upon which it was proper to instruct the jury generally and as to all witnesses. It would be proper, also, for the court to call to the attention of the jury the fact that the person claimed to have received the warning was dead, and that such fact necessitated additional care upon their part in determining what instructions he actually received. But we cannot avoid the conclusion that the learned trial judge, in singling out the testimony of Ruddy as the basis for these instructions, may have inadvertently conveyed to the jury the idea that he discredited the testimony of that witness. This method of treating evidence has just lately been fully considered by us in Kincaid v. Jungkunz, supra, page 450, 123 N. W. 1082. It is not necessary to do more than refer to the opinion in that case, written by Mr. Chief Justice Start.

4. The main contention upon the trial was as to the negligence of the defendant in failing to place an additional guard around and over the shaft upon which the deceased's sleeve caught. In charging the jury the court said: "It is not material that the saw or the shaft in this case was so placed that the operator wouldn't be likely to come in direct contact with them while engaged in their operation." The statute (R. L. 1905, § 1813) provides that machinery "shall be so located as not to be dangerous to workmen." The location of the shaft in question, the sufficiency of the guards placed around it, and the necessity for or propriety of approaching the shaft by the plaintiff, were all questions of the greatest importance to be submitted to the jury, and in our opinion the portion of the charge above quoted was erroneous.

5. It is difficult to see how, under the former decisions of this court, a verdict for $4,500 could be sustained. Gunderson v. Northwestern Ele. Co., 47 Minn. 161, 49 N. W. 694; Bremer v. Min-

neapolis, St. P. & S. Ste. M. Ry. Co. 96 Minn. 469, 105 N. W. 494. The deceased at the time of the accident was seventeen years old, and had never in any one year contributed more than $90 towards his father's or the family's support. The accident was peculiarly distressing, the young man being instantly killed in the presence of his father, who a few moments before had entered the building and was rendering him some trifling assistance in the performance of his duties. Under such circumstances it is easy to understand how the sympathies of the jurors might be reflected in the award of excessive damages. This perplexing question is one which must first be submitted to the judgment of the trial court, and we will not express any further opinion upon it in advance.

Order reversed, and new trial ordered.

On January 25, 1910, the following opinion was filed:

PER CURIAM.

On petition for reargument respondent contends that the portion of the opinion contained in the fourth subdivision is in conflict with Callopy v. Atwood, 105 Minn. 80, 117 N. W. 238, 18 L. R. A. (N. S.) 593, where the plaintiff, while operating an unguarded saw, was injured by a board or piece of wood being caught in the saw and hurled against him, and in its opinion the court said: "It is not material that the saw is so placed that the operator would not be likely to come in direct contact with it while engaged in its operation." This was a correct statement as applied to the facts in that case, for it is evident that it was immaterial whether the accident occurred by reason of actual contact with the saw or by being struck by a board thrown by it; hence its location was immaterial.

What was said in this case does not overrule the decision in Callopy v. Atwood, for here the accident resulted from the sleeve of the deceased being caught in the shaft, which the defendant claimed was sufficiently guarded, by reason of its location, and, further, that the deceased could not have come in contact with the shaft, had he performed his duties in the manner in which it was claimed he was instructed. In such a case, the location of the shaft, and the

likelihood of the operator coming in contact with it, are questions for the jury. The other suggestions in the petition are without merit.

Reargument denied.