JOSEPH L. MURPHY v. ALEXANDER GROSS and Others.[1]

June 21, 1912.

Nos. 17,688—(159).

**Death of servant — evidence inadmissible.**

In an action for personal injury resulting in death of plaintiff's intestate from a fall through an opening or door in an elevator shaft, the charges of negligence were defects in the gates protecting the openings into the shaft and apparatus, dim light about the shaft, faulty method of operating the elevator by the different employees, and absence of an elevator operator. *Held*, that evidence pro and con as to a custom and practice of each employee, when so using the elevator, to open and shut the gate on the floor where decedent fell into the shaft, and to tie the operating rope when desired to hold the elevator at a certain floor, did not render admissible testimony of the defendants that each employee, when hired, was so instructed; the claim being that the giving of such instructions corroborated defendants' contention that a custom and practice existed.

**Question for jury —charge.**

Defendants were not entitled to have the absence of an elevator attendant withdrawn from the consideration of the jury, as bearing on the negligence alleged against them, nor entitled to an instruction that decedent assumed all risk of injury by the operation of the elevator without an attendant.

**Verdict not excessive.**

The damages awarded *held* not so excessive as to indicate that passion or prejudice actuated the jury.

Action in the district court of Hennepin county by the adminis-

[1] Reported in 136 N. W. 868.

trator of the estate of Ralph Young, deceased, to recover $5,000 for the death of his intestate. The case was tried before Steele, J., and a jury which returned a verdict in favor of plaintiff for $3,750. From an order denying defendants' motion for judgment notwithstanding the verdict or for a new trial, they appealed. Affirmed.

*Cobb, Wheelwright & Dille,* for appellant.

*C. M. Bracelen* and *J. L. Murphy,* for respondent.

HOLT, J.

The defendants carried on a laundry and dye house in a four-story building in Minneapolis. In the building was an elevator in an inclosed shaft, with openings for each floor. The building was some one hundred feet in length and some forty-five feet wide. On the third floor there were two windows on the west side of the building and two on the north end. These gave some light to the surroundings of the elevator shaft. Over one hundred persons were employed in the establishment. Defendants admit that about twenty had frequently occasion to use the elevator. Other testimony shows that it was very much in use by the different employees. The elevator cage was open at the top. On the first and fourth floors automatic gates worked, so that when the elevator came even with the floor the gates opened, and when it was moved up or down the gates closed over the opening in the shaft. The testimony is not entirely clear, but the inference is strong that the gate on the third floor was similarly constructed. However, it was out of repair, so that it had to be opened by hand, and frequently it failed to close when the elevator was moved. The gates were constructed of slats, and when closed were no higher than a person could reach in over them and pull the rope by which the elevator was run and controlled.

On the side of the opening in the shaft on each floor were four electric bells or push buttons, designed to give notice to any of the floors that the elevator was desired from above or below. These buttons were generally out of order. There was no elevator operator. Any one in the establishment who wished to use the elevator ran it for the occasion. The practice was, when the bells were out of order, for the one who needed to use the elevator to call down the shaft,

"Elevator," then reach in and pull the rope which started the same. If it was desired to hold the elevator for any purpose, such as placing trucks, bundles, or baskets thereon, this rope was looped and put over a picket or bar in the cage.

Plaintiff's intestate, Ralph Young, nineteen years old, was employed by defendants on September 12, 1910, and met his death about 9:30 September 22, 1910, by falling from the third floor of the building into the shaft. Ralph Young delivered the articles washed or dyed, and it was his duty every morning to go to the third floor for a bundle which was to be delivered at 9:30. He did so the morning in question, stepped some ten feet away from the elevator to a table where a Mrs. Engman was preparing these bundles. She had not the slip ready, and so informed him. He turned back toward the elevator, saying he would hold the elevator, and for her to bring the slip. Mrs. Engman at once found the slip and started to give it to him. She saw him by the gate, but when she reached it he had disappeared, the gate was open, and the elevator at the fourth floor. An employee, Mrs. Ness, testified that she, a few moments before, wanted the elevator, saw it at the third floor, called out, "Elevator," but a man's voice answered, "Wait a minute." She waited some moments, then another employee, Fleisher, came to where she stood, and, wanting the elevator, pulled it up to the fourth floor, and entered with Mrs. Ness to go down. Young was discovered at the bottom of the shaft by Mrs. Ness before she reached the second floor.

At this time there were no artificial lights, either in or under the elevator cage or near the gates, and there was testimony tending to show that the place near the shaft on the third floor was dimly lighted from the windows mentioned, and, further, that the day in question was cloudy and dark.

Plaintiff alleged negligence because of defective gate, insufficient light, signal bells out of repair, and faulty method adopted for using the elevator in the absence of an operator. The answer is a general denial, and also an averment that Young sustained the injuries "through his own carelessness and negligence and failure to exercise the care of an ordinarily prudent person for his own safety."

The trial resulted in a verdict against defendants for $3,750. They appeal from the order denying their motion in the alternative for judgment notwithstanding the verdict or for a new trial.

The assignments of error do not bring up for review the denial of the motion for judgment notwithstanding the verdict, and hence the defendants' contributory negligence or assumption of risk need not be considered. The first, second, and third assignments of error relate to exclusion of testimony offered by defendants to prove that when the employees were hired they were instructed how to use the elevator. The fourth and fifth refer to the refusal of the court to withdraw from the jury the charge of negligence as far as the failure to have an elevator operator is involved, and the refusal to charge to that effect. And the sixth and last is that the verdict is excessive.

By one of the defendants it was offered to prove that every employee, when employed, was instructed how to tie the rope to hold the elevator, and to always tie the elevator if it was desired to keep it for further use, and also that every employee was instructed to lower the gate before leaving the elevator. This was refused, as well as an offer to show by one of the employees that he was so instructed. The defendants were permitted to show the custom and practice in regard to the operation of the elevator, the tying of the rope, and the opening and lowering of the defective gates by hand, and plaintiff afterwards introduced testimony tending to prove that no such custom existed. In this situation it is urged by appellants that the offered evidence was admissible, as tending to support defendants' contention as to custom and practice. Had the testimony been admitted, of course, it would have been used to the effect that Ralph Young was so instructed, thus indirectly proving that which counsel concedes could not be proven directly. But, that aside, there was no error in the ruling.

If instructions were given, and not enforced, so as to establish a custom or practice, they were of little use, and should not now shield defendants from the charge of negligence. The defendants all worked continually in and about the establishment, and, of course, observed, or were in duty bound to observe, whether or not instructions given

were put in practice concerning such a dangerous instrumentality as this elevator in its defective condition and mode of operation. Full opportunity was given each to testify as to the custom and practice. ·That alone affected Ralph Young, and not instructions given to his fellow servant, not brought home to him. Ham v. Wheaton, 61 Minn. 212, 63 N. W. 495; Kosloski v. Kelly, 122 Wis. 665, 100 N. W. 1037.

We are not impressed with the argument that it was error to refuse to withdraw from the jury the negligence alleged in failing to have an elevator attendant. The contention of defendants is that Young knew there was none, and hence he was guilty of contributory negligence, or assumed the risk; therefore the jury were not to consider this feature of defendants' alleged negligence. Young is dead, and cannot be questioned as to how far he appreciated the dangers attending the use by any employee of the elevator with no operator. It does not appear how familiar he was with the situation. He had worked less than ten days, and we cannot say, as a matter of law, that he understood and appreciated the risk of the absence of an operator, or, which is the same thing, the risk in using the elevator in the condition it was, and as used by every one there. The absence of an operator for the elevator was a fact to be considered by the jury, in connection with all the other circumstances, such as dim light, defective signal bells, and nonworking automatic gates.

It is claimed that the damages are so excessive that a new trial should be had, or the amount of the verdict reduced. We cannot agree to this. The father and mother of Ralph Young were forty-nine and forty-seven years of age, respectively. Ralph was the only son, nineteen years old; one daughter remaining to the parents. The young man had good habits, was industrious, strong, and in excellent health. The parents were evidently not in affluent circumstances, for Ralph, working away from home for several years, regularly sent home money for their use; the last year before his death $15 or $16 per month. We are not able to say, under the facts disclosed in this case, that the parents did not sustain a pecuniary loss in the amount of the verdict rendered by the untimely end of this young life.

Order affirmed.