# MAUD CARVER v. LUVERNE BRICK & TILE COMPANY and Others.[1]

May 16, 1913.

Nos. 18,053—(121).

**Verdict sustained by evidence.**
   1. In an action for wrongful death caused by the negligent construction and maintenance of an elevator in a manufacturing plant, the evidence *held* sufficient to sustain the verdict against the owner.

**Findings of jury not inconsistent.**
   2. The verdict in favor of the superintendent under the pleadings and issues as submitted to the jury is not inconsistent with that against the owner.

**Charge to jury — contributory negligence not in issue.**
   3. The erroneous instruction given the jury on contributory negligence is not reversible error for the reason that the evidence was not sufficient to raise such issue.

**Refusal to charge.**
   4. No error was made in refusing an instruction confining the scope of the decedent's employment within too narrow limits.

**Damages not excessive.**
   5. The damages awarded held not excessive.

Action in the district court for Rock county by the administratrix of the estate of James Kenneth Carver, deceased, against the Luverne Brick & Tile Company, R. B. Hinkly and Stanton Hinkly, to recover $7,500 for the wrongful death of plaintiff's intestate. The complaint alleged, among other matters, that defendants negligently failed to

[1] Reported in 141 N. W. 488.

Note.—On the question of the measure of duty owing to servants with respect to elevators which they are required or permitted to use for personal transportation, see note in 18 L.R.A.(N.S.) 911. And as to the duty to employees as to inspection of elevator, see note in 21 L.R.A.(N.S.) 592.

For master's liability for injury to the servant caused by elevators uninclosed as required by statute or ordinance, see note in 15 L.R.A.(N.S.) 784.

furnish a proper brake or other apparatus for holding the freight elevator in a stationary position for loading, or suitable means or appliance for stopping or controlling the same when in motion; that the brakes designed to hold the elevator in a stationary position were so worn that they would not hold it, said elevator being liable to become released and to descend with great speed; that these facts were well known by defendants and negligently permitted by them. The separate answer of defendant company alleged that the death of the intestate was not caused by any negligence on its part or of any of its officers, servants, agents or employees, but was owing to the fault of the intestate; and specifically alleged that intestate was not in the discharge of any duty of his employment, or doing any act directed or permitted by any of the defendants, at the time of meeting the accident which caused his death.

The case was tried before Nelson, J., who, at the close of plaintiff's case, granted a motion to dismiss the action against R. B. Hinkly and denied motions to dismiss against the other defendants, and at the close of the case denied separate motions to return verdicts in favor of defendants, and a jury which returned a verdict of $3,000 against the defendant company. From an order denying the motion of defendant company for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*A. J. Daley,* for appellant.

*E. H. Canfield,* for respondent.

HOLT, J.

In this action against defendants for damages caused by their negligence resulting in the death of plaintiff's intestate, plaintiff had a verdict against the defendant corporation, but the other defendants were found without fault, the president of the corporation by the court, and the superintendent thereof by the jury. The corporation appeals from the order denying its blended motion for judgment or a new trial.

The facts are substantially these: The defendant corporation for some time prior to June 6, 1911, was manufacturing brick and tile at the city of Luverne, and the defendant Stanton Hinkly was its

superintendent. Part of the plant was a four-story building where the manufactured brick or tile was partly dried before being placed in the kilns. The space between each floor was less than 7 feet. The material to be dried was carried up or down these floors by placing the same in a wheelbarrow and wheeling the barrow onto the platform of a gravity elevator located in one corner of the building. The elevator was not protected by any shaft or railing so that it was open on the two sides. A rope or cable was attached to the elevator and passed over a large pulley at the top of the building and the other end tied to a weight weighing about 150 pounds more than the elevator. Hence the elevator could raise about 150 pounds to any floor and would not descend unless a greater load was placed thereon. To control the speed of the elevator, a friction brake was applied upon the large pulley at the top. Two small ropes were attached to this brake and passed down along the north edge of the elevator opening to within 4 feet of the bottom. By pulling the one rope, the brake was set, and by pulling the other, it was released. On each floor except the ground floor, two blocks 4 inches square and of some length were placed near the edge of the elevator opening; a bolt passed through the middle of the block and into the floor. When these blocks were turned parallel with the edge, the elevator could pass freely but, if turned at right angles, they projected over the opening and the elevator was held at that floor. The one who operated the elevator did not ride on it, and the men were told not to ride thereon. Nevertheless, it was a frequent practice both for the men and the superintendent so to do. Of course, no one over 150 in weight could ride up.

Plaintiff's intestate, James Kenneth Carver, was 16 years old, weighed 109 pounds, a high school student, intelligent, active and obedient. On Friday afternoon preceding June 6, 1911, he was employed by the defendant corporation and the next morning was set to operate this elevator. He also assisted in other work, as directed. On the morning of June 6, while near the elevator on the ground floor, the superintendent, Stanton Hinkly, sent him to tell some men to clean out the brick bats in one of the kilns. He was seen to start in the direction of the kiln; the superintendent at the same time turned to go in the opposite direction into the engine room. Shortly

he also went out toward the kiln; the boy was not then there. Coming back, and in from five to ten minutes after young Carver had been sent out on his mission, Hinkly noticed that the elevator was not at the bottom floor as he expected, and, looking up, he discovered the boy's body hanging down from the elevator platform, being held by the head or neck which was caught between the edge of the platform and that of the elevator opening for the fourth floor. He was dead when so found. The head and one arm were above the platform. Within a foot or so of the elevator opening on the third floor was a wheelbarrow of the kind used in cleaning out debris from the kilns. It was tipped on its side. The supposition is that since only two wheelbarrows were down at the kilns and five men to do the work, Carver thought proper to go and get the wheelbarrow on the third floor. That barrow had evidently been brought to the elevator by him from where it was before placed on that floor. Upon the trial had, the jury rendered a verdict for $3,000 against the corporation.

The appellant, the defendant corporation, claims that it is entitled to judgment notwithstanding the verdict, on the grounds that no negligence was proven against it; that the decedent's contributory negligence conclusively appeared; and the jury having found a verdict in favor of the appellant's superintendent through whose acts alone negligence could be imputed to the corporation, judgment should also go in favor of appellant.

The very structure and mode of operation of this crude elevator suggests a death trap. In addition, the proof tended to show that the brakes sometimes failed to hold; that the brake-ropes were smooth, slippery and of a size difficult to handle with effect; that the elevator frequently got beyond the control of the operator; that, when the elevator was on the ground floor, there were no blocks to hold it down nor could the brake be depended on to hold it, but it was kept in place by shoving an old wheel weighing from 50 to 100 pounds onto the platform and placing a stick as a brace between the elevator platform and a rung in an upright ladder in the shaft. This ladder ran from top to bottom of the elevator opening and was placed next to where the small brake-ropes hung. It was barely cleared by the elevator. This ladder was used in going up and down the floors. There was

ample evidence in our opinion, to sustain the charge of the negligence alleged against the appellant as to the condition of the elevator and appliances. Hereinafter, the reason will be stated why contributory negligence of the boy is not in the case; therefore, defendant cannot demand judgment in its favor on that ground.

We also deem untenable the contention that because of the favorable verdict for appellant's superintendent either judgment or new trial should be awarded on this appeal. It may be said that this question is not properly before us, for neither the motion before the trial court nor the assignment of errors here challenges this verdict because of fatal inconsistency with the one in favor of the superintendent. However that may be, we are clear that no such inconsistency in the two verdicts is found that both cannot stand.

The negligence charged against both defendants was the dangerous condition of the elevator and appliances, and negligently permitting them so to remain. Stanton Hinkly admitted that he was superintendent and as such "had the direct management and (of) manufactured products, and that in carrying on said supervision of said entire manufacturing plant, employed and discharged all laborers and directed and superintended their work in and about said manufacturing plant," but he denies the charges of negligence in the complaint. The appellant admitted that the elevator was one of its contrivances designed to be used in the plant for certain purposes, and denied any negligence in its construction, appliances or use. The court instructed the jury that, even if there was negligence in the condition of the elevator so as to hold the appellant liable, Stanton Hinkly could not be held unless its use was so imminently dangerous that he ought not, in the exercise of ordinary care, to have set the boy to work about it. It is thus clear, from the issues made by the pleadings and the manner these were submitted to the jury, that in no sense is the verdict in favor of Stanton Hinkly determinative of appellant's freedom from negligence. In the absence of allegation or proof that the superintendent was personally charged with the sole responsibility of the manner of construction, maintenance and operation of the elevator, it should not be said that the corporation cannot be held except through his negligence. The case presents a situation

similar to that in Webster v. Chicago, St. P., M. & O. Ry. Co. 119 Minn. 72, 137 N. W. 168.

On the subject of the contributory negligence of the decedent, the court charged: "I instruct you upon that point that, where a person is killed by the negligence of another, it cannot be inferred that he was guilty of contributory negligence contributing to his death unless the undisputed evidence clearly and fully rebuts the presumption that he exercised due care for himself." This is clearly wrong. Manifestly the court misapplied the rule laid down in Knudson v. Great Northern Ry. Co. 114 Minn. 244, 130 N. W. 944; Gilbert v. City of Tracy, 115 Minn. 443, 132 N. W. 752; and La Pray v. Lavoris Chemical Co. 117 Minn. 152, 134 N. W. 313, which is a rule to guide the court in determining whether or not as a matter of law contributory negligence appears. The rule for the jury is quite different, namely, that if the fair preponderance of the evidence shows that the one injured failed to use that care which the person of ordinary prudence would have used under the same circumstances and such failure contributed in some degree to cause the injury, contributory negligence is proven.

If, therefore, there was any evidence of contributory negligence in the case, a new trial must result from the error in the charge in respect thereto. But, after careful examination of the record, we are of opinion that there is no evidence upon which could be predicated a finding of contributory negligence of plaintiff's intestate.

The court left to the jury whether the boy was within the scope of his employment when killed. By the verdict, it must be assumed that he was. Indeed the record lends scarcely any support to any other conclusion. Where one has met death through another's negligence, the presumption is that the one killed at the time used due care to protect his life. The burden was upon the appellant to prove that Carver's negligence contributed to his death. There is nothing in the circumstances under which he was found tending to overcome the presumption that he was in the exercise of ordinary care. His position repels the inference that he was attempting to ride on the elevator in disobedience to any order or instruction, if such had been given him. The means by which the elevator was operated were crude and treacherous. The boy was young and inexperienced. We

feel that if the jury had found specifically that he had contributed to his death by his own negligence, there would be no support for such finding in the evidence. The position in which the boy was found and attendant circumstances do not point to any negligent act or omission of his which contributed to his death. That being so, there was nothing to go to the jury.

Complaint is made of the refusal to give this instruction: "Unless you find that the deceased was in the performance of some act that he had been directed by Stanton Hinkly to do, at the time he met with his death, your verdict must be for the defendants." It is apparent that this is too restricted a view of the young man's employment. In every service of such a general nature as the one in which young Carver was employed, it is expected that the servant is on the lookout for opportunities to do that which he has reason to believe the master desires to be done. He is not to be directed as to every move in his work. Something is left to his discernment and judgment as to the scope of his duties.

Only one other matter need be mentioned and that is the claim that the damages are excessive. The father of the boy is 57 years old and a minister of the Gospel; the mother, a few years younger. We all know that persons engaged in the ministry are as a rule dependent on others in old age for support; their meager salaries making it almost impossible to save anything for the day of need. The heaviest expenses in bringing up and educating the boy had been met. From now on, considering the kind of boy young Carver was, the expectation would be that his earnings would to a considerable extent assist in his education. Thereafter, it would also be reasonable to expect that he would be mindful of his filial duties and able to efficiently perform them. Under the decision of such cases as O'Malley v. St. Paul, M. & M. Ry. Co. 43 Minn. 289, 45 N. W. 440; Kerling v. G. W. Van Dusen & Co. 113 Minn. 501, 129 N. W. 1048, and Murphy v. Gross, 118 Minn. 311, 136 N. W. 868, it cannot be held that the verdict is excessive.

No other assignment of error requires discussion.

Order affirmed.

Philip E. Brown, J., took no part.