ED. ARNETT, Appellee, v. ILLINOIS CENTRAL RAILROAD COMPANY, Appellant, et al., Appellee.

CARRIERS: Res Ipsa Loquitur—Pleading and Proof. The particular acts of commission or omission which resulted in a collision of trains need not be alleged or proved by a passenger who was, himself, without fault.

CARRIERS: Carrier and Engineer as Defendants—Different Degrees of Care. Assuming, *arguendo*, that the duty to exercise the highest degree of care rests on both the defendant carrier and the defendant engineer, yet prejudicial error does not result from instructing that the engineer is only required to exercise ordinary care.

TRIAL: Instructions—Separate Submission of Issue as to Joint Defendants. Issues as to joint defendants charged with negligence may be separately submitted.

MASTER AND SERVANT: Exoneration of Servant as Ipso Facto Exoneration of Master. The exoneration of a servant because of having exercised ordinary care will not exonerate a master who is obligated to exercise the highest degree of care; neither will the exoneration of the defendant servant from a charge of negligence exonerate the defendant master, when the record fails to show that the injury in question resulted solely from what the servant did.

*Appeal from Black Hawk District Court.*—H. B. BOIES, Judge.

FEBRUARY 23, 1920.

ACTION for damages against the defendant railway company and its engineer on account of injuries received by a passenger as a result of a collision. There was a verdict in favor of the engineer and against the railway company. The latter appeals.—*Affirmed.*

*George W. Dawson, Helsell & Helsell,* and *W. S. Horton,* for appellant.

*Sager, Sweet & Edwards,* for appellee.

STEVENS, J.—I. Plaintiff alleged in his petition that he and his wife boarded one of defendant's east-bound passenger trains at Iowa Falls on the morning of December 7, 1917, and that, when the train reached Boyd, a passing station on defendant's line, located about 7 or 8 miles west of Cedar Falls, a collision occurred between the train upon which he was riding and a west-bound train, causing him to be thrown violently from his seat in the smoking compartment of the coach, breaking his right leg, and inflicting other severe and painful injuries upon him. This action was brought against the railway company and the engineer of the west-bound train.

1. CARRIERS: res ipsa loquitur: pleading and proof.

The petition contained no allegations of specific acts of negligence, but charged that the collision "was due solely to the negligence and carelessness of the defendants." The defendants moved the court to require plaintiff to set out in his petition the particular acts of negligence complained of. The overruling by the court of this motion is the first matter argued by counsel for appellant. To make out a prima-facie case against the defendant railway company,

plaintiff was only required to prove that he was injured, without fault upon his part, while a passenger upon the defendant's train, by a collision of said train, or other unusual occurrence. The prima-facie case thus made raised a presumption that defendant was negligent, and cast upon it the burden of exculpating itself therefrom. *Cronk v. Wabash R. Co.*, 123 Iowa 349; *Fitch v. Mason City & C. L. Traction Co.*, 124 Iowa 665; *Dorn v. Chicago, R. I. & P. R. Co.*, 154 Iowa 140; *Alsever v. M. & St. L. R. Co.*, 115 Iowa 338; *Weber v. Chicago, R. I. & P. R. Co.*, 175 Iowa 358; *Basham v. Chicago G. W. R. Co.*, 178 Iowa 998.

The facts constituting the negligence resulting in the collision were peculiarly within the knowledge of the defendant. Plaintiff was not bound to prove the particular acts of commission or omission upon the part of the employees of defendant which caused the accident, and was not, therefore, required to allege the same in his petition. The motion was properly overruled. *Scott v. Hogan*, 72 Iowa 614; *Gordon v. Chicago, R. I. & P. R. Co.*, 129 Iowa 747.

Counsel for appellant appeared in the court below for both defendants, and filed a joint answer admitting the accident, and alleged that same was purely accidental, and without fault on the part of either of said defendants, and denied generally the allegations of plaintiff's petition. The material facts are stated under another subdivision of this opinion.

II. Much of the complaint of counsel for appellant relates to the failure of the court to submit the issues against the defendants jointly. No exception was taken to the instructions by the defendant Dubois. The court stated in its instruction the degree of care required of each of the defendants separately, as follows:

2. CARRIERS: carrier and engineer as defendants: different degrees of care.

"That it was the duty of the defendant James M. Dubois, in operating his train, to exercise ordinary care to

avoid collision with any other train, and a failure to exercise such care would be negligence;" and "that it is the duty of a common carrier of passengers to exercise the highest degree of care in transporting its passengers to their destination, and 'to this end it is its duty to see that nothing which human foresight could guard against happens in the operation, management, and control of its train, their equipment or its track, that will imperil the safety of its passengers, and a failure to perform such duty is negligence."

The exceptions taken to the instructions that are relied upon in the briefs and argument of counsel may be summarized as follows: (a) That plaintiff's cause of action, as alleged in his petition, is joint; that the only negligence, if any, disclosed by the evidence, resulting in the collision and consequent injuries to plaintiff, was the negligence of the engineer; and that the court should have submitted the cause jointly, holding both defendants to the same degree of care; (b) that the defendant engineer should have been held to the exercise of the highest degree of care; (c) that the court incorrectly summarized the particular acts of the defendant constituting negligence upon his part.

As stated above, plaintiff alleged in his petition that the collision was "due solely to the negligence and carelessness of the defendants," but no particular or specific acts of omission or commission are recited therein.   The evidence disclosed the claim of defendants to be that the collision was due to extraordinary and unavoidable causes, and not to the negligence of the engineer or any other of the company's servants; that the track was so frosty that, when the air brakes were applied, the train slid upon the track, passed the switch, and collided with the train upon which plaintiff was riding; that all of the means available to the engineer were employed to stop the train, but, on account of the condition of the track, and the hard north-

west wind which blew the sand therefrom, the engineer was powerless to stop the train in time to avoid the collision. The testimony of employees of the company who inspected the respective trains at Waterloo and Fort Dodge was offered in evidence, for the purpose of showing that every precaution was taken by appellant to have its equipment in the usual working order. Evidence was also introduced to the effect that the engineer and conductor upon the east- and west-bound trains had orders to pass at Boyd, and that Dubois knew that the east-bound train was to take the siding, for the purpose of permitting the west-bound train to pass. The petition does not charge that the sole negligence of the defendants was the failure of the engineer to stop the train in time to avoid the collision. The charge is that the negligence of both was the proximate cause of his injuries. So far, however, as the allegations of the petition are concerned, the negligence of the defendant company may have been due, in part, to the negligence of its codefendant, and also to negligence upon the part of other employees. The petition does not charge a joint cause of action, but that the injuries received by plaintiff were due to the negligence of both defendants. The equipment of the engine and train in charge of defendant, the direction and movement of both trains, the condition of the roadbed and track, were under the control and supervision of the company, together with all the instrumentalities of transportation. The duty of the engineer was confined to the proper movement and operation of his engine and train. Both defendants might have been guilty of actionable negligence, but not necessarily in the failure to perform the same duty.

The submission of the issues separately to the jury was not necessarily in itself erroneous, or prejudicial to appellant. If, in the judgment of the court, they could be more

.clearly understood and comprehended by
the jury, if submitted separately, than joint-
ly, it would not be an abuse of the court's
discretion to submit them in that way. The
real question presented by the exception to

**3. TRIAL: instructions: separate submission of issue as to joint defendants.**

the instruction upon this point is whether, assuming that
the court should have informed the jury that it was the duty
of both defendants to exercise the highest degree of care,
the submission separately of different degrees of care was
prejudicial to appellant. No instruction defining the de-
gree of care required of the engineer was requested by ap-
pellant. It is conceded that the defendant company, as a
common carrier, is bound to the exercise of the highest de-
gree of care for the safety of its passengers. The instruc-
tion, therefore, submitting the issues as against appellant
is not vulnerable to attack.

The court, in its tenth instruction, included a statement of particular acts, the failure to perform which would
constitute negligence upon the part of the engineer. This
statement was gathered from the evidence, and is apparently
a complete statement of the duty of the engineer, under the
circumstances shown. If, as contended by counsel for ap-
pellant, the jury should have found from the evidence that
the only negligence, if any, upon the part of its employees,
causing the collision, was the failure of the engineer to ex-
ercise the highest degree of care, how was appellant prej-
udiced by an instruction imposing upon him the duty to
exercise ordinary care only? There was nothing in the
manner in which the case was submitted to arouse the pas-
sion or prejudice of the jury against appellant, nor was a
higher duty imposed upon it than the law required. We
are of the opinion, therefore, that, conceding that the en-
gineer was improperly held to the duty of exercising ordi-
nary care only,—a question we do not pass upon,—appellant

was not prejudiced thereby, unless because of matters here-inafter suggested.

III. At the request of counsel for defendants, the court instructed the jury to return separate verdicts, with the result already stated. Thereupon, appellant moved the court for judgment in its favor, notwith-

**4. MASTER AND SERVANT: exoneration of servant as *ipso facto* exoneration of master.** standing the verdict against it, upon the ground that, if the collision and the consequent injuries to plaintiff were due to the negligence of defendants, it was due solely to the negligence of Dubois in failing to stop the train before it reached the switch, and that, as the liability of appellant rested solely upon the doctrine of *respondeat superior*, the exoneration of Dubois vitiated the verdict against it, and relieved it from liability. This motion was over-ruled, and this ruling is assigned as error.

It has been frequently held that, in joint actions against the master and its servant for negligence, where the sole negligence shown is the negligence of the servant, a verdict exonerating the servant vitiates a verdict holding the master liable. *Stevick v. Northern P. R. Co.,* 39 Wash. 501 (81 Pac. 999); *Zitnik v. Union P. R. Co.,* 91 Neb. 679 (136 N. W. 995); *Chicago, R. I. & P. R. Co. v. Reinhart,* (Okla.) 160 Pac. 51; *St. Louis & S. F. R. Co. v. Williams,* 55 Okla. 682 (155 Pac. 249); *Doremus v. Root,* 23 Wash. 710 (54 L. R. A. 649); *Hobbs v. Illinois Cent. R. Co.,* 171 Iowa 624; *New Orleans & N. R. Co. v. Jopes,* 142 U. S. 18 (35 L. Ed. 919).

But a verdict in favor of the servant, in a joint action against the master and such servant, relieves the former from liability only when the negligence of the servant was the sole proximate cause of the injuries complained of. *Popplar v. Minneapolis, St. P. & S. S. M. R. Co.,* 121 Minn. 413 (141 N. W. 798); *Carver v. Luverne B. & T. Co.,* 121 Minn. 388 (141 N. W. 488); *Doran v. Chicago, St. P., M. &*

*O. R. Co.*, 128 Minn. 193 (150 N. W. 800) ; *Usher v. American Smelting & R. Co.*, 97 Neb. 526 (150 N. W. 814) ; *Webster v. Chicago, St. P., M. & O. R. Co.*, 119 Minn. 72 (137 N. W. 168) ; *Lake Erie & W. R. Co. v. Reed*, 57 Ind. App. 65 (103 N. E. 127).

The Indiana court, in the case last cited, stated the rule as follows:

"This doctrine rests upon the principle that the master or principal is chargeable with the negligent act committed by his agent while engaged in the discharge of the duty of such master or principal, and, under this doctrine, where the master or principal is charged, along with its agent, in doing a particular negligent act which resulted in injury, and which the master could do *only by and through such agent*, a verdict which would acquit the agent of the negligent act, and at the same time hold the master or principal liable, would be intolerable. This would be so, however, because, in such case, the master or principal's guilt or liability *necessarily depended on the guilt of its agent.* It does not follow that a master and one of his agents may not be sued together for their separable acts of negligence resulting in a common injury, and either held liable and the other discharged from such liability."

All of the testimony offered by defendants was for the purpose of meeting the prima-facie case made by plaintiff, and to overcome the presumption of negligence arising from the facts shown. The duty rested upon appellant to offer such evidence as would show itself free from negligence proximately causing plaintiff's injuries. To accomplish this purpose, the testimony of the defendant engineer and the two conductors in charge of the trains, together with that of the employees who inspected the respective trains at Waterloo and Fort Dodge, was offered. From this testimony it appears that the accident occurred at Boyd, a passing station, located a short distance west of Waterloo, on

the morning of December 7, 1917, but the exact hour is not shown; that the accident occurred in the neighborhood of 300 feet west of a switch, which the east-bound train had orders to take, and was slowing down for that purpose; that the road ran in a practically straight line from a point about half a mile east to a point about 900 feet west of the switch, where it curved to the south through a cut, and, about half a mile east thereof, to the north. The west-bound train left Dubuque at 4:45 in the morning, and the east-bound train had come from Fort Dodge. Both conductors and the defendant engineer testified that they had orders to pass at Boyd, the east-bound train to go upon the passing track. The conductor of the east-bound train testified that he had given the engineer a copy of the order to pass No. 13 at Boyd, and had also given him the usual passing signal, and that the speed of the train, at the time of the collision, was about 10 miles an hour. The defendant engineer testified that, in approaching Boyd, his train ran down grade; that he shut off the steam about a mile and a half east of the switch, and moved the lever to work the air brakes about a quarter of a mile east of the switch, at which time the speed of his train was from 15 to 18 miles per hour. He further testified that the morning was very frosty; that the track, at the point in question, is located in a creek valley, and the rails appeared to be somewhat more frosty than elsewhere; that, when the brakes were applied to the wheels, they slid upon the track; and that he was unable, by the use of all the instrumentalities available, to stop the train in time to prevent the collision, but that it was just about stopping when the collision occurred; that he applied sand to the track, but that a strong wind from the northwest blew it off, so that it did no good. The conductor on this train testified that, when the whistle sounded for Boyd, he gave the passing signal to the engineer; that he was in the rear end

of the smoking car; that he noticed that, about a quarter of a mile from the switch, the brakes went on, but that they did not seem to hold very well;¯that the train, however, slowed down; that he noticed nothing unusual in its running or stopping, until they had passed the point where it should have come to a standstill.  The engineer and two car inspectors at Waterloo, and one employed at Fort Dodge, together with the conductors and defendant engineer, all testified that the cars and air brakes were inspected upon the respective trains at Fort Dodge and Waterloo, in the usual manner of inspecting same, and that everything worked all right and as usual.  The engineer upon the east-bound train was deceased at the time of the trial.  None of the other trainmen were called as witnesses.  No evidence was offered tending to show that difficulty was experienced because of frost upon the rails, by the employees in charge of the east-bound train, nor does it appear that the same interfered with the movement or stopping of the trains at other stations on the date in question.

No motion was offered on behalf of either defendant for a directed verdict, nor is it claimed by appellant, upon this appeal, that the evidence was insufficient to sustain the verdict in favor of plaintiff; so that our discussion is limited to the inquiry whether the verdict exonerating the defendant engineer vitiated the verdict against appellant. The finding of the jury goes no further than to hold that Dubois exercised ordinary care.  Whether he failed to exercise the highest degree of care is not answered by the verdict, nor can the court say what the jury would have found, if that question had been submitted to it.  Its finding that Dubois exercised ordinary care is by no means equivalent to a finding that he exercised the highest degree of care.  The verdict does not, therefore, establish that appellant exercised the degree of care admittedly required of it as a carrier of passengers, nor do we think the record sustains the

contention of counsel that the jury was bound, under the
evidence, to find that, if the collision was the result of neg-
ligence on the part of anyone, it was solely the negligence
of the engineer. It is not sufficient to relieve defendant of
liability for it to show that the facts and circumstances are
as consistent with care as with negligence. *Weber v. Chi-
cago, R. I. & P. R. Co.*, 175 Iowa 358. It must fully meet
the presumption of negligence arising from the prima-facie
case made out by plaintiff. The roadbed, the equipment,
and the direction, movement, and operation of both trains
were under the control of appellant railway. The scope of
the engineer's duty was limited to the proper movement and
control of the engine, of which he had charge. The west-
bound train had, so far as the evidence shows, proceeded
from Dubuque on the morning in question without encoun-
tering difficulty in stopping the train, and without encoun-
tering difficulty thereafter; nor is it claimed that the east-
bound train had experienced similar difficulty, either upon
the occasion in question or earlier that morning. The oc-
currence was unusual and extraordinary, and the jury may
have found that it was due to some failure upon the part
of appellant, not necessarily chargeable to Dubois. It
might have found that he employed all the means within his
power to stop the train, as he testified, and that he was
not, therefore, negligent; but it evidently did not find that
the collision was due solely to the negligence of the en-
gineer. No claim is made by counsel that the evidence did
not justify the submission of the issues to the jury, nor do
we see how such claim, if made, could be sustained. The
finding of the jury may be inconsistent; but, if there was
sufficient evidence to justify submission of the issues as
against appellant, this alone would not entitle it to a new
trial. It is possible that, if the court had submitted the
issues jointly, holding both defendants to the highest degree
of care, the verdict would have been different; and certainly,

a different question would have been presented for our consideration. We cannot say, however, upon the record before us, as a matter of law, that the negligence of the engineer, if shown, was the sole and only cause of the collision; nor was appellant, in our opinion, prejudiced by the instructions complained of. The issues were, so far as appellant is concerned, properly submitted.

IV. We have already disposed of all the questions covered by appellant's brief and argument, except that considerable space is occupied in the statement of facts for the purpose of emphasizing the claim of appellant that the verdict is excessive, and the refusal of the court to give a requested instruction. Plaintiff received what is known as a "green stick" fracture of the large bone of his right leg, was confined to the hospital for a brief time, suffered a great deal of pain, went about upon crutches, 6 or 8 weeks, and lost considerable time; and, while the verdict is, doubtless, substantial, the amount is not so large as to suggest passion and prejudice on the part of the jury, and we think it should be permitted to stand. The substance of the requested instruction was given by the court in its charge, and no prejudicial error resulted from the refusal to give the same as asked. We have given careful consideration to the entire record, and to all matters covered by the brief points and argument, and find no reversible error. The judgment of the court below is, therefore,—*Affirmed*.

WEAVER, C. J., LADD and GAYNOR, JJ., concur.