MARION C. CHRISTENSEN v. FRED PESTORIOUS.[1]

October 6, 1933.

No. 29,554.

[1]Reported in 250 N. W. 363.

*Sexton, Mordaunt, Kennedy & Carroll* and *John O. Peterson*, for appellant.

*Meighen, Knudson & Sturtz,* for respondent.

*DIBELL, Justice.*

Action to recover damages for the death of plaintiff's intestate caused by the negligence of the defendant. There was a verdict for the plaintiff for $5,500. The special damages were $442.14. The defendant's alternative motion for judgment or a new trial was denied. One ground of the motion for a new trial was excessive damages; others referred to errors at the trial. From the judgment entered on the verdict the defendant appeals.

The court charged that as a matter of law the defendant was negligent, and no objection is made on appeal. There are the following considerations:

(1) Whether the plaintiff's intestate as a matter of law was contributorily negligent.

(2) Whether there was prejudicial error in the reading by the court in its charge from Minnesota reports.

(3) Whether the pastor of one of the witnesses for the defendant was properly permitted to testify as to a statement made by her to him as to what the intestate said relative to the train just as the collision occurred, the question being by way of impeachment of such witness.

(4) The effect of such evidence.

(5) Whether the damages are excessive.

■ The defendant drove to St. Paul from his home in Alden, Freeborn county, on the morning of April 10, 1932, leaving there about six o'clock. He arrived at the crossing of the Milwaukee road and Cleveland avenue in St. Paul shortly after nine o'clock. He was on his way to the University Farm School, where a daughter was attending. Accompanying him were his wife, another daughter, and two young women, of whom the plaintiff's intestate was one. In crossing the tracks a collision occurred. The defendant and his daughter Caroline were the only survivors.

Defendant had a good car. It was in good condition. The morning was bright. The defendant was an experienced driver. At the intersection of Cleveland avenue and the railroad tracks there were three tracks. The defendant was driving northerly. The industry track was at the south. The other two tracks paralleled at the north. The signs and lights were set against street traffic. He drove over the industry track and stopped within a few feet of the northerly tracks. The signs indicated an approaching train. That is why he stopped. A train was approaching from the east. As far as the defendant recalls, he did not see it. If he had remained where he stopped no collision would have occurred. He was in a safe place. He started across, and there was a collision.

It is now the claim of the defendant that plaintiff's intestate should have warned him of the approach of the train or have taken some means for her safety. She was in the back seat with the other two girls. The defendant was supposedly a good driver. He had most of his family with him. There was nothing in the situation to require a holding that the plaintiff's intestate was negligent as a matter of law in failing to warn the defendant or to call attention to the approach of a train which the defendant could have seen if he had looked. The situation, so the jury might think, invited confidence on her part and did not suggest that the defendant would start the car until the danger signs changed. We have held consistently that a passenger in a car riding in the rear seat is not absolved from a duty to look out for danger at crossings. Just what should be done by such a passenger varies as situations change.

Sometimes the passenger performs a service by remaining quiet and not interrupting. We cite the following: Carnegie v. G. N. Ry. Co. 128 Minn. 14, 150 N. W. 164; Wicker v. North States Const. Co. Inc. 183 Minn. 79, 235 N. W. 630; Burgess v. Crafts, 184 Minn. 384, 238 N. W. 798; 4 Dunnell, Minn. Dig. (2 ed. & Supp.) § 7038, and cases cited.

We have reëxamined the authorities and find nothing in them, as applied to the case at bar, which as a matter of law required the plaintiff's intestate to warn the defendant of the approach of a train or take other steps for her safety. Indeed, it would be difficult to sustain a jury finding of negligence on the part of the plaintiff's intestate.

■ In its charge the court in referring to contributory negligence quoted from a number of Minnesota cases. We have discouraged the reading from opinions in charging the jury. Piepho v. Sigbert-Awes Co. 152 Minn. 315, 188 N. W. 998; Stanger v. Thompson, 153 Minn. 488, 190 N. W. 897; Roach v. Roth, 156 Minn. 107, 194 N. W. 322; Ewert v. Chirpich, 169 Minn. 386, 211 N. W. 306; Carter v. Duluth Yellow Cab Co. 170 Minn. 250, 212 N. W. 413; Garbush v. New York L. Ins. Co. 172 Minn. 98, 214 N. W. 795; 6 Dunnell, Minn. Dig. (2 ed. & Supp.) § 9781. Again we disapprove the practice. The language used by this court in an opinion is usually not the language appropriate to an instruction. In upholding a decision of a trial court, or in disapproving it, the language of the court is naturally by way of argument, and rightly so. It may be quite inapt if used as a guide to the jury in reaching a decision; and the reading of the language of the court or of a text-writer may unduly exaggerate or disparage a claim. Without reviewing all that was read by the court, we reach the conclusion that there was no prejudicial error in putting it before the jury. The practice is again discouraged in the hope that it will cease before it results in the necessary granting of new trials. As said before, it would be difficult to sustain a finding of the jury that the decedent was contributorily negligent.

■ Caroline, the daughter of the defendant, was riding in the back seat with the other two girls. She stated in substance on direct examination, when called as a witness for the defendant, that the plaintiff's intestate said nothing by way of warning or otherwise as the car approached the crossing or at the time of the collision. Her pastor, who called upon her after the accident and again later, testified that she said to him that the intestate called out the words "the train" just at the time of the accident. It is claimed that this was a privileged communication and that it was error to receive it. The statute, L. 1931, p. 232, c. 206, amending 2 Mason Minn. St. 1927, § 9814(3), provides:

"A clergyman or other minister of any religion shall not, without the consent of the party making the confession, be allowed to disclose a confession made to him in his professional character, in the course of discipline enjoined by the rules or practice of the religious body to which he belongs. Nor shall a clergyman or other minister of any religion be examined as to any communication made to him by any person seeking religious or spiritual advice, aid or comfort or his advice given thereon in the course of his professional character, without the consent of such person."

We note In re Swenson, 183 Minn. 602, 237 N. W. 589, decided prior to the 1931 amendment. No question is made of the right of the defendant to raise the question of privilege under the wording of the statute. See 4 Wigmore, Ev. (2 ed.) § 2196.

While the pastor called upon the witness at the hospital prepared to give spiritual advice or comfort if the occasion required, it is beyond genuine controversy that none was asked. The pastor received nothing but an ordinary description of the occurrence. The witness was not seeking spiritual advice or consolation or making a confession. What she said was not penitential or in confidence. In this view of the situation the court received the testimony. As far as a preliminary question of competency was involved, it was resolved by the court against the defendant objecting. The statement to the pastor was not a privileged communication.

■ The question put to Caroline by counsel for the plaintiff was an impeaching one. She had said in response to counsel for the defendant that nobody said anything. Counsel for the plaintiff then asked her if the decedent had not said or made some remark using the words "the train," and she denied it.

As the record stands, there is no substantive evidence that the decedent ever made use of such words. Caroline denies that she did. Her pastor says that Caroline said, when talking to him, that she did. An answer given to an impeaching question is not substantive evidence of the fact included in it. Its use is confined to a contradiction of the witness to whom the question is put. Lundberg v. N. W. Elev. Co. 42 Minn. 37, 43 N. W. 685; Pullen v. C. M. St. P. & P. R. Co. 178 Minn. 347, 227 N. W. 352; 6 Dunnell, Minn. Dig. (2 ed. & Supp.) § 10351(g). If requested, the court would have instructed the jury so. The whole incident is without importance. If the decedent made such statement it was just as likely an ejaculation at the moment of the collision. It is not shown that it was by way of warning. And again the record is without proof that the intestate ever used the words.

■ It is next claimed that the verdict is excessive. The amount of general damages awarded was $5,057.86.

The plaintiff's intestate was the only child of the plaintiff and his wife. He is 46 years of age and his wife is 49. They are the two beneficiaries. He is a barber living at Alden. He owns his home. It might be inferred that he is in humble circumstances. The intestate was approaching 18 years of age. She was to graduate at the high school in June. The evidence shows that she was bright and active, devoted to her parents, and much inclined to help them. The plaintiff, in connection with his barber shop, had a dry-cleaning agency. Plaintiff's intestate attended to this and received the commissions. Whenever there was need of her services in aiding families in the little community she was on hand and received pay.

Cases cited as parallel ones are usually not very useful. The factors entering into a proper award of damages vary from case to case. No two are quite alike. There is involved the character of

the person deceased as well as the character and situation of the dependents as far as they indicate the contributions likely to be received. The verdict is large. In Waggoner v. Gummerum, 180 Minn. 391, 231 N. W. 10, where the decedent was a daughter, the verdict was $6,000. This case is not very directly in point, for there were substantial differences in the decedent and in the situation of the beneficiaries. A review of it will not help. Ordinarily verdicts for death have been considerably less. Nelson v. City of Duluth, 172 Minn. 76, 214 N. W. 774; Kerling v. G. W. Van Dusen & Co. 109 Minn. 481, 124 N. W. 235, 372; Id. 113 Minn. 501, 129 N. W. 1048; Murphy v. Gross, 118 Minn. 311, 136 N. W. 868; Carver v. Luverne B. & T. Co. 121 Minn. 388, 141 N. W. 488; 2 Dunnell, Minn. Dig. (2 ed. & Supp.) § 2617, and cases. And of course only pecuniary loss to the beneficiaries can be considered.

It is conceded that the verdict is liberal or large. It has the approval of the trial court. It might have been reduced in a substantial amount. Our consideration of the evidence does not lead us to think that we should reduce it.

Judgment affirmed.