## MICHAEL A. POPPLAR v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

May 23, 1913.

Nos. 17,918—(72).

**Evidence of defective coupler — safety appliance statute.**

1. The Federal Safety Appliance Act imposes an absolute duty upon a

[1] Reported in 141 N. W. 798.

---

Note.—As to negligence of employee of railroad in stepping between moving cars, see note in 41 L.R.A. (N.S.) 32. And for contributory negligence in walking in front of moving car to prepare coupling, see note in 10 L.R.A. (N.S.) 881. And upon the distinction between assumption of risk and contributory negligence, see note in 21 L.R.A. (N.S.) 138.

The authorities on the duty and liability under Federal and state railway safety-appliance acts are collated in notes in 20 L.R.A. (N.S.) 473, and 41 L.R.A. (N.S.) 49.

The question of contributory negligence in disobedience of master's rules is treated in a note in 24 L.R.A. 657. And on the duties of master and servant as to rules promulgated for conduct of business, see note in 43 L.R.A. 306. And for the duty of a master to adopt rules to protect servant, or to warn him, against dangers not reasonably to be apprehended, see note in 21 L.R.A. (N.S.) 89.

railroad, on a highway of interstate commerce, to have couplers in such condition at all times that, when operated in an ordinary and reasonable manner, the cars can be uncoupled without requiring the operator to go between the cars. In this case the operator, in attempting to lift the pin to open a coupler, "jerked on it and he pulled up at it," three or four times but it would not uncouple. Another brakeman testified that he soon thereafter tried to lift the pin but could not. Defendant's witnesses admitted that it worked stiff. This was sufficient evidence to sustain a finding of the jury that the coupler was not such as was required by law.

### Contributory negligence.

2. Where in switching operations in a large railroad yard a car is being "kicked," and the usual method of uncoupling is to pull the pin while the cars are in motion, if the pin lifter on an automatic coupler refuses to work, the act of the brakeman, in going between the cars while in motion to make the uncoupling, is not conclusive of negligence on his part, where the only way to open the coupler without so doing is to stop the train, abandon the "kick" and walk around to a lever on the other side of the train.

### Same — violation of company rule.

3. The violation by an employee of a rule of the employer made for the protection of employees, is ordinarily held to constitute negligence *per se.* But this doctrine is not an absolute one. It yields to practical necessity. If the employer has failed to comply with some requirement of law, and such failure makes it impossible for the employee to do his work in the usual way, this may excuse him if he follows a method of doing the work which is the only method reasonably practicable under the circumstances or is a method which a reasonably prudent man would follow.

### Construction of rule — question for jury.

4. In this case a rule of defendant forbade brakemen going in between moving cars. The rule must be construed in connection with the statute. The course to be followed by a brakeman, when an automatic coupler refuses to work, is not pointed out in any rule. The only way to uncouple without going between cars was to stop the train and walk around to the other side. The conductor on the train, called by defendant, testified that it was not necessary for the brakeman to do this but that he might go between the cars while standing and open the coupler. This was one of the things the statute was designed to avoid. Under all the circumstances of the case, the question whether disobedience of the rule was in this case negligence, was one of fact for the jury.

Action in the district court for Ramsey county by the administrator of the estate of Richard S. Popplar, deceased, to recover $25,000

for the wrongful death of his intestate. The issues submitted to the jury are given in the second paragraph of the opinion. The case was tried before Dickson, J., who, when plaintiff rested, denied defendant's motion to dismiss the action and, at the close of the testimony, defendant's motion to direct a verdict. The jury returned a verdict of $2,850 in favor of plaintiff. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*J. L. Erdall* and *M. D. Munn,* for appellant.

*Samuel A. Anderson* and *A. F. Storey,* for respondent.

HALLAM, J.

Richard Popplar was a rear brakeman in a train crew of defendant. On the morning of September 6, 1909, he was engaged with his crew in defendant's railway yard at Mahnomen, Minnesota, in making up a train. It is admitted that defendant's road at this point is a highway of interstate commerce, but there is no evidence that Popplar was at the time employed in interstate traffic. At the time in question the train crew was engaged in "kicking" a car onto a side track. The car to be "kicked" was at the rear end of a short string of cars attached to the engine. The train was backed onto the side track; when it arrived at such point that the car to be "kicked" would of its own momentum run to the desired place, Popplar was to give a stop signal to the head brakeman, who was to transmit it to the engineer, and the engineer was to stop the engine. As the train slowed down, the slack would run out of the couplings and it would then be impossible to uncouple this car. It was, accordingly, part of the process of "kicking" that Popplar make the uncoupling before the engine slackened speed. This he undertook to do. Both cars were equipped with automatic couplers. At each coupling there were two pins, one on each car. The pulling of either would uncouple the cars. Each car was equipped with a pinlifter at each coupling; as the cars stood end to end the pinlifters were on opposite sides, and they were so designed that, when in order, the brakemen could uncouple from either side without going between the cars. Popplar moved along on the ground beside the cars. At the proper time he

gave the stop signal and then immediately undertook to lift the coupling pin operated by the lever on his side. He did not succeed in doing so. He then stepped between the cars, and with his hand pulled the other pin which was operated by the lever on the opposite side. While doing so he was run over and killed. The train was running about four miles an hour.

Plaintiff charges liability on the ground that Popplar's death was caused by the failure of defendant to have this car equipped with couplers which could be uncoupled without the necessity of men going between the ends of the cars, as required by the Federal Safety Appliance Act.[1] Defendant denies this charge and further contends that deceased was guilty of contributory negligence that bars recovery. The court submitted both issues to the jury. The jury found for plaintiff. Defendant moved in the alternative for judgment notwithstanding the verdict or for a new trial. Both motions were denied and defendant appeals.

1. The evidence is sufficient to sustain the finding that this coupling did not comply with the Federal Safety Appliance Act. This court has held, following the decisions of the Supreme Court of the United States, that this statute imposes an absolute duty upon a railroad, on a highway of interstate commerce, to have couplers in such condition at all times, that, when operated in an ordinary and reasonable manner, the cars can be uncoupled without requiring the operator to go between the cars. Burho v. Minneapolis & St. L. R. Co. supra, page 326, 141 N. W. 300, and cases there cited.

The only eye witnesses to this accident testified that Popplar tried three or four times to pull this pin with the lifter, that he "jerked on it and he pulled up at it" but it would not uncouple. The same witness testified that, after the accident, he himself tried to lift the pin on this car and couldn't do it, that it came up half way and blocked. One of the defendant's witnesses, the conductor, testified that this pin could be worked but that it "worked stiff," and that he

1 [27 St. 531 (U. S. Comp. St. 1901, p. 3174)].

would have reported it as "a bad coupler" had it come to his attention. The jury might fairly find from this evidence that the coupler was not such as was required by law.

2. Defendant contends that the evidence is conclusive that Popplar was guilty of contributory negligence. The Safety Appliance Act permits the defense of contributory negligence. The Employers' Liability Act of 1908 [1] amends the Safety Appliance Act so as to abolish this defense when the employee is engaged in interstate commerce; but this is not such a case. We must accordingly determine whether contributory negligence was conclusively established. In our judgment it was not. Defendant's contention is this, that the pin which was operated by the lever on the opposite side of the cars was in proper condition; that Popplar could have made the uncoupling with safety by the use of that lever, and that, under the circumstances, it was contributory negligence as a matter of law to go between the cars while in motion. A rule laid down in some of the Federal courts is invoked, to-wit, that the act of Congress contemplates that brakemen should not go between cars, and that where two ways are open to an employee to perform a certain act, one safe, the other unsafe, and the employee adopts the unsafe method, he cannot recover. This rule has been applied to cases similar to this and recovery denied. Perhaps the leading case of this sort is Gilbert v. Burlington, C. R. & N. Ry. Co. (C. C. A. Eighth Circuit) 128 Fed. 529, 63 C. C. A. 27. Within certain limitations the rule is doubtless sound, that where a safe and an unsafe way are open to an employee, he is obliged to choose the safe way. The application of that doctrine made in the Gilbert case is, however, distinctly disapproved by the United States Circuit Court of Appeals for the Seventh Circuit in the later case of Chicago, R. I. & Pac. Ry. Co. v. Brown, 185 Fed. 81, 107 C. C. A. 300, and this case was followed and applied in Grand Trunk Western Ry. Co. v. Lindsay (C. C. A.) 201 Fed. 836.

The Brown case in its facts is much like the case at bar. Brown was a switchman in a large switch yard. He was called upon at night

[1] [35 St. 65, c. 149 (U. S. Comp. St. Supp. 1911, p. 1322)].
121 M.—27.

to uncouple some cars. Not being in touch by signal with the engineer, he conveyed his signals to another switchman who conveyed them to the engineer. The uncoupling was to be done while shoving the cars. Both cars were equipped with safety appliances, but the safety appliance on the side of the car on which he was working at the time would not operate. He gave three or four jerks at it which failed to open the coupler. He then reached in between the cars and tried to lift the pin with his hand, but could not. He then tried to reach the pin operated by the lever from the other side. While doing so he fell and was injured. Had he abandoned the uncoupling until the cars came to a standstill, he would have been saved from the accident. The circuit court instructed the jury as a matter of law that, under the Safety Appliance Act, Brown was not chargeable with contributory negligence by the mere fact of going in between the cars to effect the uncoupling, but that he was required to exercise ordinary care for his own safety after he went between the cars and while there endeavoring to effect an uncoupling. This instruction was sustained. Grosscup, J., said:

"To our minds, the act was intended, not to increase the difficulty of getting compensation for injuries sustained, but to decrease the number of cases in which injuries would happen. It abolishes, in terms, assumption of risk. And where there exists a practical necessity, such as confronted this switchman, to uncouple the cars by some means other than the defective lever, what is done is assumption of risk. Putting his arm between the cars, under such circumstances, and traveling with them, is not *per se* contributory negligence."

The only substantial difference between the Brown case and the case at bar is that, in that case, the car to be uncoupled was about midway of a string of eight cars while here it was on the end.

In this case it appears that the yards at Mahnomen were large yards. There is no evidence as to the extent of switching operations going on at this time. One witness for defendant, when asked as to the number of cars in the yard, could not say whether there were 10 or 100. The conductor testified that this train was about on time, and that he had given no orders to anybody for special

hurry, but he further testified that the operation of "kicking" cars is a quick operation and that when the men are doing switching they are working rapidly. The very purpose of "kicking" instead of shoving a car in its place is to save time. The only way for Popplar to make this uncoupling, without going between the cars, was to signal the head brakeman to signal the engineer to stop the train, then walk around it and pull the pinlifter on the opposite side. This would be an abandonment of this particular "kicking" operation. This court cannot say as a matter of law that, under all the circumstances of this case, such a course would have constituted practical railroading. No witness so testified. In fact the conductor, a witness for defendant, makes it clear that this was not considered necessary. It was urged in the Brown case that this was the brakeman's duty under such circumstances. As to this the court said, "There is nothing in the facts before us that shows that the defendant in error might, without violating his duty or doing injury to the road, have stopped the operation of the train until he could have gone around on the other side." The question whether it was negligence for Popplar to go between the cars under the circumstances here presented, was a question for the jury.

3. It is also urged that recovery must be denied because deceased at the time of the accident was violating a rule of the company. It appears that in April, 1908, defendant promulgated a rule for brakemen and others, which read, "Under no circumstances will you go between moving cars or engines to open or adjust couplings, or for any other purpose." On May 12, 1908, Popplar signed a receipt for this circular, which read, "General Superintendent's circular No. 176 of April 30, 1908, relative to going between moving cars and engines, received this date and instructions will be complied with." Popplar did violate this rule when he went between these moving cars. It is contended that this is negligence *per se*. Ordinarily the violation by an employee of a rule of the employer made for the protection of employees constitutes negligence *per se*. But this doctrine is not an absolute one. It yields to practical necessity. Green v. Brainerd & Northern Minn. Ry. Co. 85 Minn. 318, 322, 88 N. W. 974; Pounds v. Chicago G. W. R. Co. 114 Minn. 312,

131 N. W. 329. If the employer has himself failed to comply with some requirement of law and such failure makes it impossible for the employee to do his work in the usual way, this may excuse him in the violation of such a rule. It does excuse him if he follows a method of doing the work which is the only method reasonably practicable under the circumstances, or which is a method which a reasonably prudent man would follow.

4. And the rule must be construed in connection with the Safety Appliance Act. The course for an employee to pursue, when a coupling pin does not operate as the law requires, is nowhere pointed out in any rule. Does the rule contemplate that he should abandon the "kicking" operation, stop the train, and walk around to the pin-lifter on the other side. The conductor, speaking as a practical railroad man, said "that wouldn't be necessary; you could stop it right there and stand still, not necessarily go around," that is to say, you could go in between the cars while they were standing and pull the other pin. In this view defendant's counsel seem to concur. They argue that, "there was a perfectly safe way for Popplar to have performed the work * * * and observed the written instructions," namely, by stopping the train and then either going around to the other side or *"by stepping in between the cars while they were standing still."*

But if the rule contemplates this method, it is clear that the statute does not. The necessity of going between the cars while standing is one of the things which, for obvious reasons, the statute was designed to avoid. That is precisely what the plaintiff in the Lindsay case, *supra,* did do. He received his injury in so doing, and it was urged there that his course was contributory negligence as a matter of law. We cannot, accordingly, hold, as a matter of law, that Popplar should have stopped the train and stepped between the cars. Nor can we hold that it conclusively appears that reasonable prudence required that he should have stopped the train and walked around to the other side, a course which his superior, the conductor of his train, declared not necessary. We hold that the jury might fairly find from all the evidence that a practical necessity existed for the disobedience of this rule and that the course

which Popplar followed in the emergency in which he was placed was the course of a reasonably prudent man.