## SAMUEL A. WILLETT v. ILLINOIS CENTRAL RAILROAD COMPANY.[1]

July 25, 1913.

Nos. 18,120—(190).

**Federal Safety Appliance Act.**

    1. The Federal Safety Appliance Act imposes upon common carriers engaged in moving interstate traffic by railroad, the absolute duty to equip their cars with couplers, that will at all times, "when operated in an ordinary and reasonable manner," couple automatically on impact.

**Same — coupling cars on a curve — question for jury.**

    2. Couplings had been made daily for more than a year on a certain curve without any failure to couple automatically on impact. At the time of the accident, the drawbars of the cars to be coupled had several inches of play or lateral motion, and were so far out of line that the cars would not couple automatically on impact on this curve. *Held*, that the court cannot say as a matter of law that the couplers were not defective within the meaning of the Safety Appliance Act, nor that the coupling was attempted at an improper place, and that these questions were properly submitted to the jury.

Action in the district court for Ramsey county to recover $25,000 for personal injury received while in the employ of defendant. The answer alleged that the cars were equipped with efficient and proper automatic couplers, in good condition and in accordance with the

[1] Reported in 142 N. W. 883.

    122 M.—33.

provisions of the safety appliance act of Congress; that plaintiff was in charge of the coupling of the cars and of the men engaged in assisting him, and himself gave the signal for the movement of the car; that in going between the cars he violated defendant's rules and instructions and disobeyed its orders. It further alleged that the accident was caused wholly by the carelessness of plaintiff and resulted from his disobedience of rules and instructions. The case was tried before Hallam, J., and a jury which returned a verdict for $5,200 in favor of plaintiff. From an order denying defendant's motion for a new trial, it appealed. Affirmed.

*Butler & Mitchell,* for appellant.

*Samuel A. Anderson* and *A. F. Storey,* for respondent.

DIBELL, C.

Plaintiff recovered a verdict for personal injuries, and defendant appeals from an order denying its motion for a new trial.

Defendant is a "common carrier engaged in moving interstate traffic by railroad"; and plaintiff, employed as the foreman of a switching crew in defendant's yards at Paducah, Kentucky, was injured while coupling cars then in use in moving such traffic.

On May 14, 1911, the switch engine, attached "head on" to a train of two cars, pushed them upon track No. 4 in the Paducah yards to make a coupling between the front car and a car standing upon that track. Plaintiff was making the coupling. Both cars were fitted with automatic couplers, and the knuckles of the couplers were properly opened; but the cars failed to couple when they came together. The train was stopped on a signal from plaintiff. From the impact, the other car moved down the track far enough to leave a space of some ten feet between it and the train. The knuckles were again opened and, on a signal from plaintiff, the cars were again brought together and again failed to couple. The train was again stopped on a signal from plaintiff. From this impact, the other car moved down the track far enough to leave a space of four or five feet between it and the train. As the cars came together the second time, plaintiff observed that the drawbars bearing the couplers were pushed

to one side to such an extent that the couplers were so far out of line that they would not couple by impact while in that position. He attempted to push the drawbar upon the stationary car into line with his hands, but was unable to do so. He then took hold of the "grab iron" on the car with his hand, and placed his foot against the drawbar, for the purpose of pushing it into proper position. At this instant the train came against the car and crushed his foot. It was the duty of those operating the train not to move it against the stationary car without a signal from plaintiff, and he claims that he gave no such signal and had no knowledge that the train was moving.

Plaintiff based his action upon the ground that the train was unexpectedly moved against the stationary car without a signal, and also upon the ground that the automatic couplers were defective within the meaning of the Federal Safety Appliance Act. Both contentions were submitted to the jury.

On the argument, defendant conceded that the evidence justified submitting to the jury the claim that the train was negligently moved without a signal, but insisted that it was error to submit to them the claim that the couplers were defective.

The track curved at the place where the attempt was made to make the coupling, but was straight one or two car lengths further out.

Defendant claims that the cars did not couple on impact because they were on this curve; that plaintiff, who was in charge of the work, ought to have had them moved out upon the straight track; that there was no defect in the couplers; and that the failure to make the coupling was due to the fault of plaintiff in attempting to make it at an improper place.

The drawbars upon these cars had several inches of play or lateral motion and had been pushed or crowded so far out of line that the cars would not couple on this curve. There was no other defect in the couplers.

This court, following the decisions of the United States Supreme Court, has held that the Federal Safety Appliance Act,[1] imposes upon railroads engaged in moving interstate traffic, the absolute duty to equip their cars with couplers "that will at all times, when operated

[1 27 St. 531, U. S. Comp. St. 1901, p. 3174.]

in an ordinary and reasonable manner," couple upon impact. Burho v. Minneapolis & St. L. R. Co. 121 Minn. 326, 141 N. W. 300; Popplar v. Minneapolis, St. P. & S. S. M. Ry. Co. 121 Minn. 413, 141 N. W. 798. On the argument defendant practically conceded that, under this rule, if couplings were required to be made on curves, the company must provide couplers which will couple on curves; but contended that plaintiff was not required to make couplings on curves, and that the place where the coupling was attempted to be made was not an ordinary or proper place for making such couplings.

The curve in track No. 4, as shown by the plat introduced in evidence by defendant, is what is termed a ten degree curve, and gradually changes to a straight line. The evidence does not show very clearly how much the track curved where the coupling was attempted, but there was some curve at that place. Plaintiff testified that he had made couplings at the same place daily for a year and a half preceding the accident, and that the couplings never before failed to make automatically.

In view of this testimony, and of the testimony as to the extent to which the drawbars in question could be crowded out of line, and of the fact that, at the time of the accident, they were out of line to such an extent that the coupling would not make on impact, the court cannot hold as a matter of law that the coupling was attempted at an improper place, or that the couplers were not defective within the meaning of the safety appliance act. These were questions for the jury and were properly submitted to the jury.

Order affirmed.

HALLAM, J., took no part.