23 P.(2d) 1085

## KREIGH et al. v. STATE BANK OF ALAMOGORDO.

### No. 3633.

Supreme Court of New Mexico.

May 24, 1933.

Rehearing Denied July 24, 1933.

Holt & Holt, of Las Cruces, for appellant.
J. L. Lawson, of Alamogordo, for appellees.

BICKLEY, Justice.

While Mr. Justice SADLER'S opinion does not reflect the decision of the court, the statement of the case and of the facts is satisfactory, and the views hereinafter expressed are based thereon.

■ I am in accord with that portion of the opinion of Mr. Justice SADLER which declares that there is nothing in other of our decisions or in section 478, chapter 133, Laws 1921, which detracts from the statement quoted from Williams v. Van Pelt, 35 N.

M. 286, 295 P. 418, as follows: "(a) It seems to be conceded by the parties, and we understand the rule to be, that the law in effect at the time of sale governs the matter of redemption and acquiring title after failure to redeem. Cooley on Taxation (4th Ed.) par. 1384. *Appellee insisted below, and the court held, that the statute of 1921, under which the sale was made, governed the matter. This is correct.* [Italics ours.] When the 1921 Act became effective March 12, 1921, the first half of the taxes of 1920 were past due, but the last half was not yet payable. Under such circumstances, the Legislature had the undoubted power to change the procedure for enforcing delinquent taxes and to make that procedure applicable to the taxes for 1920. There had been no sale and consequently no right of redemption had arisen. Sales to be thereafter made were within the prospective scope of the act whether they were for past or future years. The taxpayer whose property had not been sold prior to the passage of the statute had no vested right in the former procedure to enforce collection. He was not yet the subject of suit. He could avoid sale by paying what the law required. He could insist that the validity of the assessment should be determined by the law in force when it was made. And the law so provided. Section 478, c. 133, Laws of 1921."

I am of the opinion that all that was "saved" by said section 478 is that, in a suit brought or judgment rendered affecting taxes assessed or which were delinquent at the date of the approval of the 1921 act, "the validity of such delinquent taxes shall be determined by the law in force at the time of making the assessments therefor." See Chambers v. Bessent, 17 N. M. 487, 134 P. 237.

I advance the further proposition that section 478 should be considered in connection with and as modified by sections 509 and 602 as the opinion of the court suggests, and when so considered appears to save only such portions of repealed statutes as may be necessary to effectuate the enforcement of and securing penalties, obligations, and rights already accrued under the repealed statutes, and that there is no repealed statute dealing with the effect as evidence of a tax deed, and hence none such could have been intended to be saved.

Section 509 declares: "All acts repealed shall be continued in force as far as is necessary to enforce penalties or obligations."

Section 602 provides: "All laws and parts of laws repealed by Sections 109, 237, 317, *478* and 509 of this act shall remain in force for the recovery of penalties, civil or criminal, already incurred, * * * and *so far as may be necessary to enforce the assessment, levy and payment of taxes for the years 1920 and 1921*, or to enforce or secure rights or liabilities already accrued thereunder."

If the italicized portion of section 602 is the antecedent of "accrued thereunder," it appears that the repealed statutes, *which were adaptable for enforcing or securing rights or liabilities* affecting taxes assessed or which were delinquent *prior to 1920 and 1921*, were not saved by section 478. If, on the other hand, "accrued thereunder" means rights and

liabilities which had accrued for *any* prior years, then it would appear that the Legislature did not consider that they had *saved*, by section 478, *any of the repealed statutes which were adaptable* "to enforce the assessment, levy and payment of taxes, * * * or to enforce or secure rights or liabilities," for such prior years, but saved them by sections 509 and 602.

I invite attention also to the principle that: "The saving clause must have been intended to save something, which would have been otherwise destroyed; to save something out of that, which was repealed." Colby v. Dennis, 36 Me. 9, 12, cited in Lewis' Sutherland Statutory Construction (2d Ed.) sec. 287. Assuming that section 4101, C. L. 1897, making a tax deed prima facie evidence of certain facts was repealed by omission from the 1915 Code, then the only provision for a tax deed existing in the 1915 Codification is section 5506 thereof, which merely provides that the treasurer "shall execute and deliver to him [purchaser] a deed for the real estate sold." Chapter 80 of Laws of 1917 contains no provision with reference to deeds, except that more than one tract sold may be included in one deed. None of the sections of earlier statutes repealed by sections 109, 237, 316, 478, and 509, of chapter 133, Laws 1921, pertain to the effect of a tax deed with respect to its being *prima facie evidence* of the facts recited in the deed or of any facts. So, in considering the saving clauses of the 1921 act, we would not be able to discover that such saving clauses referred at all to any statute relating to the rule of evidence with respect to

tax deeds. It might be appropriate to say that the Legislature, by the enactment of section 455, had changed the common-law rule, but I contend that we do not derive any assistance from such circumstance of change in construing the saving clauses themselves in order to arrive at the legislative intent.

The opinion of Mr. Justice SADLER holds in effect that, if suit were brought under the provisions of the 1921 act for taxes delinquent at the date of the approval thereof, the provisions of said act would be applicable and would not be limited merely to the bringing of the suit or the rendering of judgment, but would include the provisions relative to the advertisement for sale, sale, issuance of certificate of sale and the effect thereof, the manner of applying for the tax deed, the issuance and delivery of the deed, and the effect thereof, but would *exclude* such provisions as affect the determination of the validity of such delinquent taxes. This is correct.

But so far as section 478 is concerned, I see no reason to deny the applicability of the provisions of the 1921 act to "any proceedings" growing out of or incident to the enforcement of the payment of such delinquent taxes which do not affect the determination of the validity of such delinquent taxes, even though proceedings may have been instituted for the collection of such delinquent taxes or establishment of a lien therefor, prior to the effective date of the 1921 act.

In the case at bar, the sale having been ordered before the 1921 act went into effect, and the sale made after its effective date, it

is possible that, under section 509 or 602 or both, the officials in charge might employ the provisions of the repealed acts *in so far as necessary* to enforce penalties and obligations and enforce or secure rights or liabilities already accrued thereunder.

■ For such purposes, such provisions of the new act as would be available might be employed. In the case at bar, it is admitted by the appellant that the sale was advertised under the provisions of the repealed statute. So far as the time element is concerned, if the officers had seen fit, they could have advertised the sale of April 5, 1921, under the provisions of the 1921 act to have sold property ordered sold on March 9th.

Turning to sections 509 and 602, and applying them to the facts in the case at bar, as far as disclosed, we find the repealed laws are to be employed only in "so far as is necessary" to "enforce obligations" or "to enforce or secure rights or liabilities." It is fundamental that the *procedure* to enforce or secure rights or liabilities may be changed. In other words, that no person has a vested right in procedural law. This statement is subject to the qualification embodied in section 34 of article 4 of our Constitution, which declares: "No act of the legislature shall affect the right or remedy of either party, or change the rules of evidence or procedure, in any pending case."

I take it that it is the state that is the party interested in the enforcing of the liabilities of the taxpayer, and in securing the state's right to enforce payment of delinquent taxes. After sale, a *right* I think which the delinquent taxpayer, who is being proceeded against for the enforcement of the payment of delinquent taxes, has, is to have the right to redeem preserved without more onerous conditions. This consequence does not occur in the case at bar. The protection of section 34 of article 4 of the Constitution, supra, is not peculiar to taxpayers who are litigants. It protects all litigants.

Under the provisions of both the new and the repealed acts, the certificate of sale, when recorded, vests in the purchaser, his heirs or assigns, a complete legal title to the property therein described subject to redemption as provided by law.

This right to redeem and the right to have the validity of the delinquent taxes determined "by the law in force at the time of making the assessments therefor" are rights of the delinquent taxpayer. The exercise of the right to redeem by payment of the sum stipulated in the statute is not the payment of the delinquent taxes. The taxes have dropped out of the picture, and the former owner having suffered the property to be sold for the delinquent taxes, and seeking to redeem, is simply in the situation of repurchasing the property from the state or county or its successors or assigns. See Lewis v. Tipton, 29 N. M. 269, 222 P. 661.

■ The delinquent taxpayer whose property has been sold according to law, and who has failed to redeem, has no further rights in the matter, as counsel for appellant correctly asserts. Of course, "in all controver-

sies and suits in relation to the rights of the purchaser, his heirs or assigns to the lands" (section 455), the former owner may contest the validity of the taxes and within certain limits assail the proceedings taken to enforce the collection thereof. Section 455 merely affords a rule of evidence in lawsuits involving titles to land. It might as well have been in the Code of Civil Procedure. It was not inappropriate for it to be in the Revenue Act. Substantially the same provision was contained in the Act of March 1, 1882 (section 4101, C. L. 1897), and was never expressly repealed by the Legislature, its repeal, I assume, being accomplished by virtue of its omission from the 1915 codification. The enactment of this provision (section 455) in 1921 merely served to shift the burden of proof which, according to the authorities cited in the court's opinion, rested on the claimant of the tax title, to the shoulders of the assailant of such tax title. It was competent for the Legislature to do this, except in pending cases. The Supreme Court of the United States in Turpin v. Lemon, 187 U. S. 51, 23 S. Ct. 20, 23, 47 L. Ed. 70, said: "Assuming the common-law rule to be, as stated by the elementary writers upon taxation, that the purchaser at a tax sale is bound to take upon himself the burden of showing the regularity of all proceedings prior thereto, it is entirely clear that statutes declaring the tax deed to be prima facie evidence, not only of regularity in the sale, but of all prior proceedings and of title in the purchaser, are valid, since the only effect of such statutes is to change the burden of proof, which rested at common law upon the purchaser, and cast it upon the party who contests the sale."

The very language of section 455 shows that it is intended for the benefit of the purchaser. The policy of making such a provision for the benefit of the purchaser is reflected in a number of decisions of the courts. In Blakeley v. Mann, 153 Minn. 415, 190 N. W. 797, 798, the court said: "In construing and applying these provisions, this court has held that the rights of parties in tax proceedings are to be determined by the law in force at the time of the tax sale (State v. Krahmer, 105 Minn. 422, 117 N. W. 780, 21 L. R. A. (N. S.) 157); that a statute giving to the purchaser the right to a refundment if the sale was adjudged void, entered into, and formed a substantial part of his contract (State v. Krahmer, 112 Minn. 372, 128 N. W. 288); that these provisions are an essential part of the system by which the state obtains its revenue, and are inducements for the purchaser to buy (State v. County of Chisago, 115 Minn. 6, 131 N. W. 792, Ann. Cas. 1912D, 669); and that it is the policy of the state to protect purchasers by providing a method for their reimbursement where the title fails, and to deprive them of the state's lien upon the adjudication of the invalidity of the tax title would be a radical departure from this policy, which would effectually discourage or bring to an end all tax purchases (Downing v. Lucy, 121 Minn. 301, 141 N. W. 183, Ann. Cas. 1914C, 755). Presumably all these considerations were in the minds ·of the lawmakers when the amendments were enacted. It is not to be supposed that they intended to

enact a law which would trench upon the obligation of contracts between the state and purchasers at tax sales. Rather it should be presumed that they intended to respect and preserve the contract rights of such purchasers and that the amendments should not apply to liens theretofore acquired." See Chisholm v. Bujac, 27 N. M. 375, 202 P. 126; Harris v. Friend, 24 N. M. 627, 175 P. 722.

It has been said that the purpose of provisions so beneficial to the purchaser is to secure to the state the most advantageous sales that may be made after the taxpayer has failed to exercise his right to redeem. In the case of Nelson v. Rountree, 23 Wis. 367, the court decided: "A tax deed must be allowed all the effect as evidence given by the law in force at the time of the sale." In the course of the opinion the court cited Smith v. Cleveland, 17 Wis. 556, in which the court remarked that the effect of a deed issued to the purchaser was most material and important to him and could not have escaped his attention. Chief Justice Dixon, who wrote the opinion in that case, directed the reporter to print, in connection with his opinion, the opinion of Judge Miller of the United States Circuit Court for the District of Wisconsin in the case of Lord v. Milwaukee & Mississippi R. R. Co. I quote here a portion of the opinion of Judge Miller so appended as being very illuminative as to the question of state policy: "The predominant policy of the legislature, in passing the act of April 19, 1852, is to secure the collection of revenue for public uses. The precise directions given in the law, as to the mode of assessing, advertising and selling, and all other things prescribed to be done by the public officers, should yet be followed strictly and substantially, although they are but directory. As the system was carried on by various officers, changed frequently by public election, and not always conversant with the necessary modes of carrying on complicated plans of taxation and sale, or sufficiently cautious to do it accurately, it was seen that these directions were not strictly pursued, and that loose, irregular and defective methods had been fallen upon in practice. It was determined therefore by the legislature, to consider the provisions of the law as directory merely, and to protect the *purchaser* against the neglects, imperfections and malfeasance of public officers. The act therefore prescribes, in strong terms, that the deed shall be conclusive in the hands of the grantee as to all things in their character directory. While the door was open for the legal owner to contest the proceedings, they were considered essential; and the courts, in their decisions, were reduced to the necessity of overruling the tax title merely on account of some slight irregularity or deviation from the terms of the law. From this they are relieved by the overruling and sweeping provisions of the act of April, 1852. Many hard cases, no doubt, will occur under this law; but it is considered, by the representatives of the people, expedient that individual loss should be submitted to in order to carry out a measure of public

policy. If the owner will not exercise the ordinary vigilance required by law in paying his taxes, or in redeeming his land within the time allowed, he neglects a duty at the peril of having it applied for the purpose of defraying the expenses of government. Every person, whether resident or non-resident who owns land located in this state, knows that it is subject to taxation, and to sale for the payment of taxes annually assessed. He is presumed to know the times prescribed by law for the sale of his land and for its redemption, and also the conditions of the sale and the effects of non-redemption. Ignorance of the law should not in this matter excuse a man. The legislature has, after much imperfect legislation, adopted the wise policy of requiring the owners of lands to pay the taxes annually assessed thereon, and thereby contribute punctually to the support of government. Land is wisely made the debtor of the taxes, and subject to a statute lien, to be extinguished by a summary proceeding in rem, whereby the title of the owner is divested upon neglect to redeem, after the long time allowed by law for that purpose. A due regard to the interests of the tax paying citizens, and to the improvement of the state, required the enactment of the law; and courts should enforce it, *as to sales made subsequent to its publication*."

As I have said, section 455 affording a rule of evidence regarding the burden of proof might as well have been in the procedural code. It was perhaps inserted in the Revenue Act in order to direct the attention of the purchaser at tax sales to the benefits thereof provided.

In the case at bar, the execution and delivery of the tax deed set out in appellant's answer was admitted by appellee. I discover nothing in the saving clauses adverted to in the opinion of SADLER, J., or in the discussion, to indicate an intention by the Legislature in enacting chapter 133, Laws 1921, to "save" a rule of evidence said to prevail between the adoption of the 1915 Code and the effective date of the 1921 act. Such rule of evidence (section 455) was not a "provision of this act" (chapter 133, Laws 1921) inconsistent with any provisions of prior acts repealed which might by any construction be said to be *saved* by the saving clauses.

The controversy and suit "in relation to the rights of the purchaser" in the case at bar came on for determination about ten years after the tax sale of the land in question and about seven years after the time for redemption had expired. The trial and determination of the suit and controversy in the case at bar was to be had according to the rules prevailing at the time of the trial, and not such as may have prevailed when the taxes were assessed.

Being satisfied with Brother SADLER'S argument and conclusions in the main, I think they should lead to a reversal of the judgment, and that the cause should be remanded, with directions that judgment be rendered in favor of appellant, and two of the justices being in accord with this view, so far as the disposition of the cause is concerned, it is so ordered.

WATSON, Chief Justice (concurring).

The sole question before us is whether Laws 1921, c. 133, § 455, is applicable under the here existing facts. No question of legislative power is involved. The Legislature was free to prescribe as it saw fit. Its will in the matter is expressed in section 478. As to the meaning of that section we are divided in opinion in an unusual and perhaps unfortunate degree.

I have not considered the language exceptionally difficult to construe. Section 455 is one of "the provisions of this act" (chapter 133). Section 478 says that it "shall not affect or be applicable to taxes heretofore assessed, or which are delinquent at the date of the approval" of the act (March 12, 1921). The taxes in question were assessed in 1919. They became delinquent in 1920. This is the main or leading provision of this saving clause.

By way of exception, it is provided "that suit for the same [taxes previously assessed or delinquent] may be brought and judgments thereon rendered in the manner provided by this act." This, because the new procedure for foreclosing the lien involved much of efficiency, convenience, and economy to the state, while changing the taxpayer's rights or status in no substantial respect. Cf. American Nat. Ins. Co. v. Brown, 33 N. M. 42, 261 P. 810.

"But," said the Legislature, "the validity of such delinquent taxes shall be determined by the law in force at the time of making the assessments therefor." In this language the courts were, no doubt unnecessarily, reminded that, though authorized to proceed with the foreclosure under the new act, the substantial question (always in this suit the validity of the tax) must be decided under the repealed acts.

I am unpersuaded ·that this mere caution, appended to the exception, modifies· what I have called the main provision, or that the whole meaning of the saving clause is found in the appendage. Nor am I persuaded that the Legislature may be deemed to have said: "The provisions of this act shall not affect or be applicable to taxes heretofore assessed, or which are delinquent, *and upon which suit has been brought*, at the date of the approval hereof."

Prior to Williams v. Van Pelt, 35 N. M. 286, 295 P. 418, I find nothing in our decisions opposed to these views, except Chambers v. Bessent, 17 N. M. 487, 134 P. 237. That case I think lost authoritative standing when a contrary view was expressed and given effect in Crawford v. Dillard, 26 N. M. 291, 191 P. 513.

I consider Williams v. Van Pelt, supra, not controlling. It ignored section 478 as determinative of the question whether section 455 was there applicable. That question was unnecessarily decided, since a mere assumption would have been sufficient.

My effort, up to this point, has been merely to state my views. The majority definitely reject them. I have no desire, if I could hope, to outargue my associates. I have stated my position for different reasons.

First, able counsel have urged it upon us again and again during the thirty-year career of this luckless product of the legislative wisdom. They might continue to urge it were it not here plainly set forth and as plainly rejected. Second, the surrender of my own views does not leave the court united. I must take a secondary position.

In this particular case, I could, obviously, concur in an affirmance of the judgment. I conceive, however, that litigants are entitled to have the law applied as it is, not as some judge thinks it should be. This case and Duran v. Springer, 37 N. M. 357, 23 P.(2d) 1083, which we have considered and are deciding simultaneously, make it plain that it is not and has not been the law that section 455 is inapplicable because the tax had been assessed before the effective date of chapter 133. What, then, is and has been the law?

The history of tax legislation in this state presents a picture of the conflicting interests and claims of the investor in tax titles, on the one side, and of the taxpayers who have indulged in the luxury, or been unable to avoid the necessity, of delinquency, on the other side. The tide of battle has ebbed and flowed. Under the looser statutes, particularly that of 1913 and in a lesser degree that of 1917, the way of the investor has been beset with difficulty. The stricter statutes, those of 1899 and of 1921, have cut off numerous means of saving the taxpayer's property. Each time that there has been a tightening of policy in aid of tax collection, and incidentally in favor of the investor, the Legislature has made use of section 478 or its substantial counterpart. Why?

I think the Legislature intended to write a saving clause. It intended to preserve, as to taxes already assessed or delinquent, those advantages (not vested rights of course) then enjoyed by the taxpayer at the expense of the investor, and to apply its new policy of strictness to taxes thereafter to be assessed. It thus softened the blow.

I can, as I must, surrender this view of the meaning and purpose of section 478 to the decision, concurred in by a majority, that the Legislature, through defects in expression, has failed in that purpose, or that my view is precluded by former decisions. Thus yielding, I embrace the interpretation set forth by Brother BICKLEY that there remains nothing of the saving clause of section 478 except the provision that the validity of taxes assessed or delinquent prior to March 12, 1921, is to be determined according to the laws in force when the assessments were made. I find nothing to support or commend the theory espoused by Brother SADLER that section 478 is to operate as a saving clause merely in a case like this, where the general tax suit had been commenced prior to the effective date of chapter 133.

The statute does not support it. To determine whether the provisions of chapter 133 are applicable, the statutory criterion is whether the taxes in question had been theretofore assessed or were delinquent; not whether suit had been commenced. Rejec-

tion of the prescribed criterion does not authorize us to set up one of our own.

If we were at liberty to adopt a construction so foreign to the language, I can see no public policy to be served by so doing. Instead of aiding the large and well-defined class of property owners whose taxes had been assessed or were delinquent, it would aid a small and ill-defined class. A purely accidental circumstance would determine the matter; the circumstance that the general tax suit had been commenced on or prior to March 11, 1921, under former statutes, rather than on or after March 12th, and under the new statute; a circumstance sure to vary in the different counties. The resulting confusion need be no more than suggested.

This theory is a middle ground. It seems to arise from a recognition of section 478 as an attempted saving clause, and a conviction that former decisions control against the interpretation I here espouse. But I think that no former decision reasonably suggests—surely none compels—this theory. I feel that we should merely make a bad matter worse by adopting it.

I therefore concur in reversing the judgment.

ZINN, Justice (concurring).

I concur with Chief Justice WATSON in reversing the judgment.

I have consistently maintained that section 478 is a saving clause. Without section 478 the law is clear that, as to the validity of the assessment of land preceding the state's power to sell for nonpayment of taxes and the conservation of vested rights of the delinquent owner, such assessment, power to sell, and rights of the owner in the property sold, all are governed by the law in force at the time of the assessment, and the law is clear that, without section 478, the proceedings relating to the sale itself, the validity of the sale, or the rights acquired by the purchaser at sale, they are governed by the law in force at the time of such sale. That is the law anyway. Section 478 was not required to declare the law.

I contended that section 478 is a saving clause intended to preserve for the landowner from interference whatever rights or privileges theretofore existed—not to create new rights or privileges in the purchaser at tax sale.

Justices BICKLEY and SADLER denominate section 478 a saving clause. We have held that it is a saving clause. State Tax Commission v. Powers & Scroggins, 29 N. M. 10, at pages 13 and 14, 218 P. 186.

The usual function of a saving clause is not to create anything, but to preserve something from immediate interference. The purpose of section 478, apparently as I viewed it, was to save from the operation of chapter 133 all rights and privileges accrued to the owner of the property by the then existing laws.

However, to hold in accord with the view of Justice SADLER would be to hold that the delinquent tax collector did determine the

rights and privileges of the parties by bringing suit and obtaining judgment under the mode of procedure outlined by the law in force at the time of the assessment. Justice SADLER holds that the suit in the instant case having been instituted under the mode of procedure outlined by Laws 1917, c. 80, and judgment obtained thereunder, then the tax deed has no prima facie effect in a suit to quiet title, whereas, had the suit been instituted and judgment obtained in the manner outlined by Laws 1921, c. 133, then section 455 steps in and gives the tax deed prima facie effect. The Legislature did not intend to vest the tax collecting authorities with any such power. The general result of the view adopted by Justice SADLER is the same as that of Justice BICKLEY, simply that, though section 478 be denominated a saving clause, it means nothing in suits instituted in the manner provided by Laws 1921, c. 133.

Realizing that the ultimate construction to be adopted by this court will be that of Justice BICKLEY, and the law will be definitely established in this state as expressed in Williams v. Van Pelt, 35 N. M. 286, 295 P. 418, 420, namely, " * * * We understand the rule to be, that the law in effect at the time of sale governs the matter of redemption and acquiring title after failure to redeem," I must yield my views to enable the litigants to have the law applied as the majority of this court ultimately construe section 478, and hold that the Legislature in its attempt to adopt what it supposed was a saving clause, due to the unfortunate phraseology employed, did not enact a saving clause.

SADLER, Justice (dissenting).

The appellees, plaintiffs below, filed a complaint in ordinary form to quiet title to a small piece of real estate in the town of Alamogordo. The appellant, defendant at the trial, answered setting up ownership of the property by virtue of a tax deed to it issued pursuant to a certain tax sale certificate evidencing a sale to Otero county for delinquency in payment of 1919 taxes, and subsequent assignment thereof to defendant. In a reply the appellees admitted the issuance of the tax deed which was copied at length in appellant's answer, but asserted divers and sundry reasons for its invalidity and that of the tax sale certificate whose contents were recited in detail in the tax deed. A demurrer to the reply was interposed and overruled, and the cause later proceeded to trial.

Upon the trial the appellees offered in evidence a deed to the immediate grantor of one of the appellees, then the deed from such grantor to the appellee Kreigh, and rested. Thereupon, the appellant moved for judgment upon several grounds, but chiefly that appellees had failed to submit proof to support the claimed invalidity of the tax title, and that, having admitted the existence of the tax deed pleaded, a prima facie case in appellant's favor was established entitling it to judgment on the state of the proof. The motion for judgment was denied, the appellant announcing it would stand on its motion. Appellees then asked leave to reopen their case to offer further proof. This motion was likewise denied. The court thereupon entered its decree quieting title in appellees to the lot in con-

troversy. The effect of this was, of course, to deny appellant's claim to a valid tax title. The present appeal followed.

The proceedings leading up to tax sale were initiated under the provisions of chapter 80, Laws of 1917. Taxes on the property in question being for less than $25 were not required to be based on judgment. It sufficiently appears from the record that tax delinquencies for 1919, in amounts so requiring, had been placed in judgment on or before March 9, 1921, in a tax suit prosecuted for that purpose, since an order of sale issued on the date mentioned. The sale relied upon appears to have taken place April 5, 1921, to Otero county. Tax sale certificate to the county was dated April 5, 1921; assigned to appellant August 3, 1926, after lapse of the prescribed period of redemption; and tax deed issued on August 18, 1926. In the meantime and on March 12, 1921, chapter 133, Laws of 1921, a new taxing code, became effective. Section 455 of the 1921 act gives prima facie effect to the tax deed in making proof of certain steps essential to the validity of a tax title. If it applies and governs, there can be no doubt of appellant's right to prevail.

In the absence of such an enabling statute, the burden of proof is on the purchaser of a tax title to show compliance with the statutory prerequisites essential to the existence of the title relied upon. This burden is not met by the mere production of a tax deed. Black on Tax Titles, §§ 443–444; 61 C. J. 1369–1372. Such was the rule at common law and so remains unless changed by statute.

Accordingly, the admission in appellee's reply that this tax deed existed in no manner relieved appellant of the burden of proving the statutory steps warranting its execution and delivery, unless the statute relied upon applies and governs this case. The appellant by invoking and relying upon said section 455 contends that it does.

Hudson v. Phillips, 29 N. M. 101, 218 P. 787, presents a situation somewhat analogous to the case at bar, in that there reliance was placed upon section 455 as furnishing presumptive effect to a tax deed issued under proceedings originating prior to the passage of the Laws of 1921, chapter 133, of which said section was a part. This decision, as we interpret it, does not aid the position of the present appellant. Any reliance upon the case must be based on the contention that, but for N. M. Const. art. 4, § 34, denying effect on pending cases to any change in the rules of evidence or procedure, the decision would have been exactly opposite what it was. Any such assumption is unwarranted. The opinion itself goes no further than to hold that, even if tax title claimant in that case were correct in the application sought to be given Laws 1921, c. 133, § 455, making tax deeds prima facie evidence of certain facts, he could not prevail, since the constitutional provision in question would deny it application to that case as one pending when the 1921 law became effective. This court merely assumed the correctness of the contention for the purpose of disposing of the argument made.

We are thus confronted at the very threshold of the present case with a determination of what law governs the rights of the parties, viz., the provisions of chapter 80, Laws of 1917, and other then existing enactments governing the collection of delinquent taxes, under the authority of which the sale in question was initiated and held; or the provisions of chapter 133, Laws of 1921, effective March 13, 1921, some three weeks prior to the tax sale held April 5, 1921, except as suspended by certain saving clauses therein contained.

The interests of the parties are decisively affected by a determination of this important question. The appellees very naturally relate their rights to the 1917 and other then existing laws touching the matters at issue. The appellant, no doubt by reason of the very fact that the sale in question transpired after the effective date of the 1921 law, invokes the provisions of that act, particularly section 455 thereof.

No decision of the question can, of course, be had without a construction of the saving clause contained in Laws 1921, c. 133, § 478, reading as follows: "That Sections 5464, 5465 and 5475 to 5511, inclusive, of the New Mexico Statutes, Annotated, Codification of 1915, Chapters 58 and 78 of the Laws of 1915, Section 10 of Chapter 54 of the Laws of 1915, and Chapter 80 of the Laws of 1917, and all other acts or parts of acts in conflict herewith are hereby repealed; Provided, that the provisions of this act shall not affect or be applicable to taxes heretofore assessed, or which are delinquent at the date of the approval hereof, except, that suit for the same

may be brought and judgments thereon rendered in the manner provided by this act, but the validity of such delinquent taxes shall be determined by the law in force at the time of making the assessments therefor."

Just what is the meaning and effect of the language of section 478, standing alone, or interpreted in connection with other saving clauses found in the same act as sections 509 and 602 thereof? Does it mean that, except as to the two things mentioned, the bringing of suit and recovery of judgment, the new act is to be without any effect on tax titles originating upon assessments made prior to its enactment, or is it entitled to a different construction as expressive of true legislative intent? We must seek the answer in our previous decisions dealing with the language of this section as found in this and prior delinquent tax laws.

The troublesome question of what law governs the rights of the parties in tax title cases has been many times before this court. Upon numerous occasions we have been called upon to settle the question without a construction of the language of the above-quoted saving clause. Again, in other cases said language, or substantially the same, as it has appeared in Laws 1899, c. 22, § 34, or in Laws 1917, c. 80, § 18, or as just quoted, in Laws 1921, c. 133, § 478, has been before the court for construction. The language first appeared in the 1899 law, known as the "Duncan Act." Chapter 84, Laws 1913, a new delinquent tax law, repealed the 1899 law without a saving clause. Not long after the enactment of the 1913 law the availability of its

provisions for collection of taxes for prior years came before this court for determination.

Crane v. Cox, 18 N. M. 377, 137 P. 589, 590, invoked a decision upon the power of the county treasurer of Dona Ana county to proceed under the 1913 law to sell property for taxes assessed and delinquent for years prior to its passage. It was contended that to permit such a sale would be to give retroactive effect to the 1913 law. We sustained the power of the taxing officials to employ the machinery of the new law to collect taxes assessed or delinquent prior to its passage, and held that the new law in operating upon taxes for previous years was being given only a prospective operation. We said: "A law is not retrospective, or a law does not operate retrospectively, simply because it applies to transactions which originated before the law took effect; but it is the nature of the application that is determinative."

In Pace v. Wight, 25 N. M. 276, 181 P. 430, 434, our decision was invoked upon the effect of the 1913 law viewed from a different standpoint. Under the 1899 law the period of redemption was three years from the date of sale. Under the 1913 law it became three years from the date of recording the tax sale certificate. We there held, upon rehearing, that the 1913 law operated retroactively upon all tax sale certificates held by the county when the 1913 law came into effect, so as to extend the period of redemption, in favor of the taxpayer, to three years from the date of recording the certificate. The court was helped

to this conclusion by the circumstance that the 1899 law had been repealed without saving clause and was considered, "except as to transactions past and closed, as though it had never existed." It was conceded that the 1913 law, thus interpreted, amounted to an act of grace on the part of the state. Attention was called to the fact, moreover, that, because of constitutional guaranties against impairing the obligation of contracts, the 1899 law could not be deemed repealed as against private purchasers at tax sales held during the existence of the 1899 law.

The holding in Pace v. Wight was followed consistently and upon the same reasoning in State v. Romero, 25 N. M. 290, 181 P. 435; Crawford v. Dillard, 26 N. M. 291, 191 P. 513; Lewis v. Tipton, 29 N. M. 269, 222 P. 661; and Christian v. Lockhart, 31 N. M. 331, 245 P. 249. None of the cases mentioned in this paragraph, except Crawford v. Dillard, undertook a construction of, or was concerned with, the language of the above-quoted saving clause. All of them, in so far as concerned the retroactive effect given the 1913 law, were decided independently of the language of any such provision.

Now, we turn to a line of cases dealing with the specific language of the above-mentioned saving clause. So far as our research discloses, said provision occurring in one or another of the different taxing laws mentioned is either specifically mentioned or construed in the following cases, to wit: Territory v. Perea, 10 N. M. 362, 62 P. 1094; U. S. Trust Co. v. Territory, 10 N. M. 416, 62 P.

987; Straus v. Foxworth, 16 N. M. 442, 117 P. 831, 832; Chambers v. Bessent, 17 N. M. 487, 134 P. 237, 241; Crawford v. Dillard, 26 N. M. 291, 191 P. 513, 515; State Tax Commission v. Powers, 29 N. M. 10, 218 P. 186, 187; State v. Persons, 29 N. M. 654, 226 P. 886, 889; Williams v. Van Pelt, 35 N. M. 286, 295 P. 418, 420. In addition, the construction placed upon said provision in Williams v. Van Pelt, supra, without citing the section, was followed in determining the rights of the parties in Baker v. Johnson, 35 N. M. 293, 295 P. 421; Moore v. National Bank of New Mexico, 35 N. M. 300, 295 P. 424; Knollenberg v. Mitchell, 35 N. M. 345, 297 P. 145; and Knollenberg v. State Bank of Alamogordo, 35 N. M. 427, 299 P. 1077—all being cases which were under advisement along with Williams v. Van Pelt.

Territory v. Perea, supra, and U. S. Trust Co. v. Territory, supra, deal with this saving clause as it occurs in Laws 1899, c. 22, § 34. The opinion in each case turns on other provisions of the 1899 law, and nothing helpful in construing the provision is to be found in either.

Straus v. Foxworth, supra, was concerned chiefly in meeting the contention that the curative provisions of section 25 of the 1899 law were limited to errors in listing property. The court held otherwise, and in the course of its discussion adverts to the saving clause contained as section 34 in the act. It should be mentioned, too, that this same section 34 extended the payment of all taxes then delinquent to May 1, 1899, sixty days beyond its effective date. The opinion seems to forecast the holding in Chambers v. Bessent, which followed soon thereafter. The court said: "In section 34 there are provisions for mitigating what might be considered the rigors of the act through leaving the validity of delinquent taxes to be determined by the law in force when the assessment was made, and by extending the time of payment of taxes then delinquent, or in litigation at the passage of the act. This measure of leniency toward defaults already made was superfluous, if no greater degree of strictness was to be exercised toward defaults of the future."

Chambers v. Bessent, supra, was decided two years later. The case turned upon whether a tax certificate for taxes of 1898 issued upon a sale under the 1899 law furnished color of title. Obviously, the certificate prescribed by the 1899 law was color of title, if only such law were applicable. It was urged, however, that, by virtue of this saving clause, the law in force in 1898 was carried forward and controlled the question. We held in an opinion by Mr. Justice Hanna, adopting the language of Judge Pope at nisi prius: "I am [we are] of opinion that the proper construction of the concluding clause of this act is that, while it did not interfere with any assessments previously made, all of which were to be judged by the pre-existing law, it was contemplated by the Legislature that as to any proceedings subsequent to the act, entirely separate and apart from the matter of assessments, the provisions of the act were to control."

Crawford v. Dillard, supra, followed Pace v. Wight and State v. Romero in giving retroactive operation to the 1913 law in its effect on tax certificates held by the county at the time of its passage, thus holding the period of redemption to have been extended to three years from recordation of the certificate. So much of the holding in that case involves no construction of this saving clause. It is only in so far as the opinion deals with Laws 1917, c. 80, § 18, that we are concerned. For, while Laws 1915, c. 78, an amendment to the 1913 law, had intervened changing the period of redemption from three years after recording certificate to three years from date of certificate, since the date necessarily precedes the recording, to have held that the Legislature intended retroactive operation for the 1915 amendment, as was declared in Pace v. Wight and kindred cases to have been the legislative intent with reference to the 1913 law, as an act of grace by the state, would have resulted in reducing, instead of extending, the taxpayer's period of redemption—an intent which we were unwilling to impute to the Legislature. We accordingly held that the 1915 amendment, as its terms disclosed (though no less clearly than those of the 1913 law except for the result to follow), was intended to operate prospectively only.

Having thus demonstrated the prospective character of the 1915 amendment, we turned to the 1917 law, and cited section 18, the saving clause, in proof of its prospective nature, saying: "This [1917] act, by its terms, does not purport to deal with *tax sales had prior to its passage,* and, on the other hand, its retrospective operation is expressly limited by section 18 as follows:" (Quoting the so-called saving clause.)

We went on to say that, even without the "limiting language" of section 18, the saving clause, section 12, the only one in the 1917 act referring to the sale by the county of tax certificates, "clearly speaks to the future only." In this case, in so far as we considered the 1917 law, we dealt with the applicability of its provisions to a sale held under a previous law. We said it did not purport to deal with "tax sales had prior to its passage." In Lewis v. Tipton, supra, another of the group of cases following Pace v. Wight, in giving retroactive effect to the 1913 law in its application to tax certificates held by the county upon its effective date, we again thus interpreted the effect of our holding in Crawford v. Dillard, in so far as it related to the 1917 law, saying: "We further held in the Crawford-Dillard Case that chapter 78, Laws of 1915, and chapter 80, Laws of 1917, had prospective operation only, *and had no effect upon tax sales made prior to their enactment.*"

We in no sense intimated or held in Crawford v. Dillard (something to be borne in mind) that giving purely prospective operation to the 1917 law would deny applicability of its provisions to sales under it for taxes assessed or delinquent for years previous to its enactment, a contention scarcely to be urged in view of the clear distinction developed in Crane v. Cox, supra, between the na-

ture of retrospective and prospective statutes.

Coming now to State Tax Commission v. Powers, supra, we find it one of the two cases most to be relied upon as adopting a construction in conflict with that announced in Chambers v. Bessent and Williams v. Van Pelt, the other being Crawford v. Dillard. Here we find a situation somewhat different from that disclosed in the cases already discussed. Each of them, save State v. Romero, a suit in mandamus against the county treasurer to compel issuance of a tax deed, was a suit involving the title claimed under a tax deed. All, including State v. Romero, were concerned with tax deeds as ripened muniments of title. But in the Powers Case we find a taxpayer, some months after the 1921 law became effective, seeking to secure cancellation of assessments on 42 head of cattle in Valencia county for the years 1918, 1919, and 1920, upon the ground that he owned no such property for the years in question.

While there is nothing in the opinion to suggest that petitioners were moving under the 1921 law to secure the cancellation sought, special counsel for state tax commission appeared in opposition and argued that certain provisions of said law governed the time for presenting such petition, as against section 5475, Code of 1915, and Laws 1919, c. 101, each in force and applicable for one or more of the years in question, unless the repeal of the last-mentioned statutes by the 1921 act was suspended by virtue of the saving clause contained as section 478 thereof. In disposing of the contention we said: "It is contended that certain provisions of chapter 133, Laws 1921, govern the time within which this petition should have been presented, and that it was not presented within the time required by that act. This contention is untenable. The statute is clearly prospective, and does not appear to be retrospective in its operation, except that the procedure therein prescribed for the collection of taxes may be adopted in the collection of taxes assessed or due prior to the adoption of the statute. The saving clause contained in such statute is practically the same as that contained in chapter 80, Laws 1917, which was construed by this court and held to expressly limit the terms of the statute to a prospective operation. Crawford v. Dillard, 26 N. M. 291, 191 P. 513."

Some of the language employed in the Powers Case is broad enough to sustain a construction of said section 478 that, except as to bringing suit and rendering judgment under the 1921 law, the rights of the parties are to be tested by the laws in force when the property was assessed. But what does the opinion actually decide? It is only to such extent that it is stare decisis. Anything said beyond that is pure dictum. The point decided was that a statute prescribing the timeliness of proceedings to correct assessments remained in force and was applicable to the case before the court by virtue of said saving clause. It decided that and nothing more. If the taxpayer was making time-

ly application under the law in force when the assessments were made, the court had power to correct same. If his application was tardily made, the assessments were valid as they stood.

It cannot be questioned but that in the Powers Case there was involved a proceeding looking to the validity or invalidity of an assessment. Under the express language of the saving clause the laws in force at the time of making the assessment were continued in force for testing the "validity of the tax." We so held in Chambers v. Bessent and, as hereinafter shown, in Williams v. Van Pelt. And certainly no tax could be valid which was based on a void assessment.

State v. Persons, supra, was a suit by the state under Laws 1921, c. 133, to collect a balance of taxes claimed to be due on certain grazing and farm lands for the year 1920. Appellants had paid what they conceded to be justly due. The law in force when the property was returned required assessment at its "actual value." Under the 1921 act it was a lawful defense in any suit for taxes to show that the property had been assessed in excess of its "actual cash value." Its actual value had been finally fixed by state tax commission before the filing of suit at a figure which the trial court found to be excessive. The question for determination was whether the defense, permissible under the 1921 law, was open to the taxpayer. State tax commission, as appellee, apparently was contending that the defense was unavailable in reliance upon said section 478. After quoting this section and section 431, permitting the defense mentioned, we said: "Were this the only language of the 1921 act to be construed, we would be strongly persuaded of the correctness of appellant's position, but in section 509 of the act, which is a repealing section, we find the following language: 'This repeal shall not affect classifications or valuations made or to be made and rights or liabilities already accrued thereunder' (referring to previous acts). As we have already seen, the actual cash value of appellant's property had become finally established as a matter of law before the 1921 act became effective, and for the court to undertake to revalue the property in accordance with its ideas would certainly affect the valuation already made, the very thing sought to be avoided by section 509."

Our view of the proper construction to be given section 478 so far as expressed or intimated in the Persons Case is in harmony with the interpretation placed upon the same language in Chambers v. Bessent and Williams v. Van Pelt.

Williams v. Van Pelt, supra, involved taxes delinquent for the year 1920. Suit was prosecuted, judgment recovered, and sale held under Laws 1921, c. 133. Sale to the county took place December 10, 1921, and certificate of sale was assigned to appellant on January 2, 1926. This very saving clause, section 478, was before the court for construction. In the first opinion handed down we announced the holding that, except to authorize the bringing of suit and recovery of judgment, the 1921 law had no effect upon the rights of the parties, such rights being

determinable by the laws in force at the date of the assessment. Upon rehearing an able brief was filed by counsel for appellee in that case. In it, under the heading, "Sec. 478, c. 133, Laws 1921, considered historically and judicially," counsel .reviewed practically every case that had theretofore interpreted the language of this saving .clause, particularly Chambers v. Bessent, Crawford v. Dillard, State Tax Commission v. Powers, and State v. Persons, urging upon us that the construction given the language of the saving clause in the first opinion handed down was "wrong and unsound intrinsically as well as out of line with previous constructions."

After consideration the first opinion was withdrawn. We handed down a substituted opinion on rehearing which, while adhering to the result previously announced, gave effect to the language of the saving clause, as follows: "(a) It seems to be conceded by the parties, and we understand the rule to be, that the law in effect at the time of sale governs the matter of redemption and acquiring title after failure to redeem. Cooley on Taxation (4th Ed.) par. 1384. *Appellee insisted below, and the court held, that the statute of 1921, under which the sale was made, governed the matter. This is correct.* [Italics ours.] When the 1921 Act became effective March 12, 1921, the first half of the taxes of 1920 were past due, but the last half was not yet payable. Under such circumstances, the Legislature had the undoubted power to change the procedure for enforcing delinquent taxes and to make that pro-

cedure applicable to the taxes for 1920. There had been no sale and consequently no right of redemption had arisen. Sales to be thereafter made were within the prospective scope of the act whether they were for past or future years. The taxpayer whose property had not been sold prior to the passage of the statute had no vested right in the former procedure to enforce collection. He was not yet the subject of suit. He could avoid sale by paying what the law required. He could insist that the validity of the assessment should be determined by the law in force when it was made. And the law so provided. Section 478, c. 133, Laws of 1921."

The language of that opinion is the latest expression of this court upon the subject. The rights of the parties in that case and in the group of tax title cases, hereinabove noted and held under advisement along with it, were passed upon and determined under the construction followed in Williams v. Van Pelt. It harmonizes with the construction forecast in Straus v. Foxworth and adopted in Chambers v. Bessent; accords with the interpretation intimated in State v. Persons; and is not inconsistent with anything that is actually decided and therefore stare decisis in Crawford v. Dillard and State Tax Commission v. Powers. Certainly, the pronouncement in Williams v. Van Pelt declares the present settled state of the law upon the subject, and we see no reason to overrule or depart from the same.

We thus find certain matters regarding the proper construction of this saving clause to have been definitely settled by adjudicated

cases. Crane v. Cox, dealing with the 1913 law, enacted without a saving clause and operating to repeal the 1899 law, holds that the collection of delinquent taxes for years previous to its enactment is within the prospective scope of the new act. Chambers v. Bessent and Williams v. Van Pelt, construing respectively the 1899 and 1921 acts, containing this identical language, decide that taxes for prior as ,well as future years are within the prospective scope of the new acts; that proceedings had and sales held under them are governed by their provisions, except as to the validity of the assessment, and as for that matter, and necessarily so, except as to any other acts done under the sanction of previous laws in force when such acts were performed. State Tax Commission v. Powers likewise holds this language in the 1921 law effective to preserve in force pre-existing laws on matters touching the validity of the assessment. Crawford v. Dillard determines that the 1917 act carrying the same language was not intended to deal with "tax sales had prior to its passage," a construction reaffirmed in Lewis v. Tipton.

But the case at bar presents a state of facts different from any disclosed by our adjudicated cases, and one which must have been in the legislative mind when it incorporated the saving clause into the new act. Its effective date caught the proceedings for collection of 1919 delinquencies in a half-finished stage. Proceeding under the 1917 law, judgment for taxes in excess of $25, was entered and the property ordered sold, on March 9, 1921. The new act went into effect on March 12th, three days thereafter. The property in question could only have been sold, under the proceedings initiated, by virtue of the 1917 law. It was sold for taxes for less than $25, and was not based on a judgment. The 1917 law permitted such a sale. The 1921 act directs judgment to support a sale irrespective of the amount of taxes.

Cooper v. Hills, 23 N. M. 696, 171 P. 504, 505, in its facts, is somewhat similar to the case at bar, but with this difference, namely, that the 1913 act there considered had no saving clause. Proceedings were begun under the 1899 law to sell property for a delinquency in the payment of taxes for 1911. The 1913 act became effective March 18, 1913. The sale was held March 27, 1913. The question involved was an irregularity in the assessment, which under the 1899 law would have been inconsequential. The court said: "The assessment in 1911 was irregular, in that the law then required that it should be made in the name of the owner of the property or in the name of unknown owners. Sections 4026 and 4040, C. L. 1897. But while it was irregular in that respect, the Legislature saw fit to provide that such irregularity should not vitiate the sale made by virtue of such assessment and its delinquency. In 1913, however, this was changed; no healing or curative provisions having been inserted in the act of 1913. Nor did the act contain a savings clause. Consequently, sales for delinquent taxes made after the act of 1899 was repealed are governed by the

law in force at the time the sale is made. The appellant having acquired no rights under the tax sale law of 1899, cannot invoke the provisions of that law in defense of the sale under the act of 1913."

We find it reiterated time and again in the texts and cases that ordinarily the law in effect at the date of sale governs in the matter of redemption and acquiring title after sale. Cooley on Taxation (4th Ed.) par. 1384, Williams v. Van Pelt, supra. And to the effect that the rights of the parties are governed generally by the law in force at date of sale, see Cooper v. Hills, supra, and Chisholm v. Bujac, 27 N. M. 375, 202 P. 126. But notwithstanding these general statements, the power of the state to subject incidents to follow the sale to subsequent legislation cannot be questioned, so long as the rights of prior individual purchasers are not materially affected.

Then what law, as respects this sale, was in effect at the date thereof on April 5, 1921? It is our view that, by virtue of section 478, construed in connection with sections 509 and 602, companion saving clauses found in the 1921 act, it was chapter 80, Laws of 1917, as well as all other applicable pre-existing laws affecting the matters at issue. If such prior laws were by these saving clauses continued in force to authorize and validate this sale, proceedings for which were pending at the time the 1921 law became effective, and we consider they were, then to all legal intents and purposes it is the same as though the sale had actually antedated the passage of the new law. And as said in Crawford v. Dillard of the 1917 law containing a similar saving clause, the new act was not intended "to deal with tax sales had prior to its passage."

Except as it might aid the proper interpretation to be given section 478, we are not here concerned with the permissive character of its language in relation to bringing suit and recovering judgment on taxes theretofore assessed. After the proviso, the section recites that the provisions of the act shall not affect or be applicable to taxes theretofore assessed, "except, that suit for the same may be brought and judgments thereon rendered in the manner provided by this act," but admonishes that the validity of such delinquent taxes shall be determined by the law in force at time of making the assessments therefor.

In view of the obvious contribution to public convenience, efficiency, and economy accomplished by the new act, particularly respecting procedure for collecting delinquent taxes, as pointed out in American National Insurance Company v. Brown, 33 N. M. 42, 261 P. 810, and Williams v. Van Pelt, supra, there is ample authority and sound reason to suggest that the words "may be" were employed in a mandatory sense. See 59 C. J. 1082 (1085); Lorenzino v. State, 18 N. M. 240, 135 P. 1172; 5 Words and Phrases, First Series, page 4436; 5 Words and Phrases, Third Series, page 53; 2 Words and Phrases, Fourth Series, page 667. But the question is not before us and cannot now be decided.

As throwing additional light on legislative intent, it may be mentioned that the 1921 law did not confine the taxing officials to the blanket suit for a single year's taxes contemplated by section 421 thereof. Section 448 authorized the Attorney General, district attorney, or special counsel to bring a separate action to recover taxes due from any person, or upon any property, where the amount was in excess of $100. The judgment to be recovered might be in personam or in rem, or both, and was required to cover all taxes then due and unpaid from such person or property "whether by reason of one, or more than one, assessment." The judgment was also required to contain an order of sale of the property.

It would be an anomalous situation if a tax deed issued upon a tax sale under such a judgment, covering taxes assessed both before and after the effective date of the new act, were to have one effect when considered as based upon taxes assessed previously and another effect when considered as based upon taxes assessed subsequently to the passage of the 1921 act. No such result could have been intended. Unquestionably, the Legislature intended that taxes for past as well as future years should be within the prospective scope of the new law and its provisions for suit, judgment, sale, redemption, and acquisition of title.

It follows from what has been said that the provisions of the 1921 act, and particularly those of section 455 making the tax deed prima facie evidence, under our view, were not applicable to the tax title here involved. We think the trial court was correct in declining to give the tax deed presumptive effect, and that its judgment should be affirmed.

HUDSPETH, J., concurs.